RODDY *v*. STATE OF INDIANA.

[No. 169S17. Filed April 21, 1970. No petition for rehearing filed.]

*Bruce E. Bloom,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General and *R. Michael Bruney,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a conviction in a criminal prosecution in which appellant was charged with, and convicted of first degree burglary, rape and kidnapping.

It appears from the evidence that the prosecuting witness, who was 13 years of age, awoke on the night of April 23, 1967 to find appellant standing nude by her bed. He raped her under the threat of using a knife which he held in his hand. Failing in his attempt to get her to agree not to tell, appellant struggled with the prosecutrix and inflicted cuts upon her with the knife. He then forced her out of the house and into his car. Finally the car became stuck in some mud along a rather deserted road. Appellant then raped her again. He forced the prosecuting witness out of the car and into a nearby woods. She insisted on being taken to the hospital. Appellant insisted that she make up a story that would conceal his identity. When they reached a spot in the woods where there was a tree cut down he stopped and said: "Diane, I hate to do this to you but I am not going back to prison no more and you're going . . ." Under threats of death she agreed to tell the story made up by the appellant.

Appellant objected on three occasions to the introduction in evidence of the statements made by him about his prison record and contends that the court erred in overruling his objections to such statements and denial of his motion to strike out the statement with reference to his prison record. That is the only question raised on this appeal. We deem it necessary to set out the contents of the testimony herein with reference to the question raised:

1. "Q. Did his privates penetrate into your privates on this occasion?

   "A. Yes, it did, so after he got finished then he got out and he opened the trunk but still I wasn't paying any attention to him and he had on some gloves and he still had the towel in his hand and so he told me to come and go back and he left the back of the car up so if anybody would pass by they would think his car had stopped, or something, and

so we went back up there and when we got by this tree that was cut down he stopped and he said, *"Diane, I hate to do this to you but I am not going back to prison no more and you're going"*—

"MR. BLOOM: Objection please. May we approach the bench, Your Honor? (Emphasis added)

2. "Q. Linda, again I will ask you right at the start to speak loudly so we can all hear you. When we recessed you were describing what had happened after you again left the car with the defendant and had walked up to [a] point where there was a tree that had been cut down. I would like to ask you to begin over and begin to the tell the jury again what happened, what you did, and what the defendant did, at that point in time.

"A. Well, after I got out of his car, at least when we got out, we walked in the mud and we got to a tree that was cut down and then he stopped and he turned around and he said, *"Diane, I hate to do this to you but you're going to tell on me and I'm not going back to prison again."*

"Mr. BLOOM: Objection, please, for the record I must renew my objection to this testimony and the jury be admonished to disregard it and also move for a Mistrial.

"THE COURT: The objection is overruled and the Motion is denied. (Emphasis added)

3. "Q. What did you go over you were supposed to say?

"A. That I don't know who the guy was that come in the house and got me and took me off but to tell them what kind of a car he was driving and I had never seen the buy [sic] before. That's what I was supposed to say when I got home and I told him all right I would say it and he said if I did say anything else different and *if he did go back to prison and get time that when he got out he was going to kill me even if he*—

"MR. BLOOM: Objection. The defendant will object to the last three lines of the answer relating to conversations she had with the defendant regarding his going back to prison . . ." (Emphasis added)

Of course it is error for the State to introduce evidence of other crimes or confessions of a defendant in a criminal case except in certain instances which might go to prove intent, common scheme or plan, etc. *Blue* v. *State* (1968), 250 Ind. 249, 235 N. E. 2d 471; *Loveless* v. *State* (1960), 240 Ind. 534, 166 N. E. 2d 864; 29 Am. Jur. 2d, *Evidence*, § 320. However, this is not that kind of a situation. There is also a general rule that the statements of a defendant relating to the crime or connected therewith are always competent unless made under duress or threats. The statement or conversation of the defendant in this case was voluntary. The threats were made by him against his victim. The evidence is part of the *res gestae*. The appellant had just committed multiple rapes on his victim and was in the very act of not only kidnapping the defendant but threatening her with bodily harm if she told of his criminal acts. In McCormick on Evidence, 3rd Ed., § 274, p. 586, it is stated:

> "If there is any common element or concept present in all these variegated uses of the term *res gestae* it is a very rudimentary one, namely the notion that evidence of a concededly relevant act or condition may bring in likewise the words which accompanied it."

*Res gestae* means literally "things done" and covers words spoken that are so closely connected to the occurrence as to be part of it, namely, "the whole of the transaction under investigation and every part of it." Black's Law Dictionary, 4th Ed.

Normally it is thought of as an exception to the hearsay rule. However in this case the statement is not inadmissible hearsay. It is a quotation of the direct statement of a party to the action, namely the appellant, and what he said at the time he was committing the crime charged. The mere fact that he uttered prejudicial words with reference to his prior prison record does not give him a privilege to exclude those words in a trial in which he is charged with using force and threats, even to the point of threatening

murder. To permit an exclusionary rule such as urged by the appellant in this case would grant immunity to the most vicious criminals who saw fit to exploit their past viciousness and criminality in threats against their victims.

> "Where evidence of an act of accused is admissible, his declarations, made at the time, having a tendency to ■ elucidate, explain, or give character to the act, are a part of the transaction and for that reason admissible, whether exculpatory or incriminatory."

8 I.L.E., *Criminal Law,* § 172, p. 269.

We can see no ground for the exclusion of these statements by the appellant under any principle of which we are aware.

The judgment is affirmed.

Hunter, C. J., Givan and DeBruler, JJ., concur.

Jackson, J., concurs in result.

NOTE—Reported in 257 N. E. 2d 816.