STATE OF INDIANA ON THE RELATION OF OTIS E. KELLER A/K/A OTIS KELLY *v.* CRIMINAL COURT OF MARION COUNTY, DIVISION IV, AND THE HONORABLE JOHN B. WILSON, JR., AS JUDGE OF SAID COURT. STATE OF INDIANA, ON THE RELATION OF NOBLE R. PEARCY, PROSECUTING ATTORNEY OF THE 19TH JUDICIAL CIRCUIT *v.* THE CRIMINAL COURT OF MARION COUNTY, DIVISION FOUR, AND THE HONORABLE JOHN B. WILSON, JUDGE OF THE CRIMINAL COURT OF MARION COUNTY, DIVISION FOUR.

[No. 774S131, 132. Filed October 15, 1974.]

*Craig Eldon Pinkus, William Levy,* of Indianapolis, for relator State of Indiana ex rel. Keller; *Noble R. Pearcy,* Prosecuting Attorney, *John R. Barney, Jr., David B. Hughes,* Deputy Prosecuting Attorneys, for relator, State of Indiana ex rel. Pearcy; *Richard L. Milan,* of Indianapolis, *John B. Wilson, Jr.,* Judge, Marion County Criminal Court Division Four, for respondent.

## ORIGINAL ACTION

ARTERBURN, C.J.—We have consolidated for consideration these two petitions for Writs of Prohibition since they arise out of a single criminal trial. In an action titled "State of Indiana v. Otis E. Keller a/k/a Otis Kelly," the Honorable John B. Wilson, Judge of the Marion Criminal Court, Division Four, issued a wide-ranging discovery order. This order required substantially full pre-trial discovery by both the prosecution and the defendant. The order, if not complied with, was to be enforced by the Court's inherent powers. The prosecutor and the defendant filed separate petitions for writs of prohibition to be directed against certain of the discovery items sought from each of them. We deny both petitions and affirm the discovery order.

## I.

The State was ordered to produce the following:

1. The names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements and a list of memoranda reporting or summarizing their oral statements.

2. Any written or recorded statements and the substance of any oral statements made by the accused or by a co-defendant, and a list of witnesses to the making and acknowledgment of such statements.

3. A transcript of those portions of grand jury minutes containing testimony of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial.

4. Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons.

5. Any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused.

6. Any record of prior criminal convictions which may be used for impeachment of the persons whom the State intends to call as witnesses at the hearing or trial.

With the exception of names and addresses of prospective witnesses, the State objects to being compelled to disclose this information on the general ground that the discovery order is beyond the traditional scope of criminal discovery in Indiana. To assert that a court's action is non-traditional is not a sound argument. The question is, does the Court rationally have the power to do what it did? Most discovery cases that have come to this Court for review have been those in which a defendant has been the party asking for discovery. *Cherry* v. *State* (1972), 258 Ind. 298, 280 N.E.2d 818; *Dillard* v. *State* (1971), 257 Ind. 282, 274 N.E.2d 387; *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N.E.2d 873; *Bernard* v. *State* (1967), 248 Ind. 688, 230 N.E.2d 536. Our role has been to define standards with which to judge the exercise of the trial court's discretionary denial of the

motion. However, in this case the court granted motions for discovery in a completely balanced order against each side. A trial court may, *sua sponte,* affirmatively order discovery. We have specifically so held: "Discovery may be provided for by statute, court rule or granted by the inherent power of the trial court." *Bernard, supra,* 230 N.E.2d at 539; *Accord, Antrobus, supra,* 254 N.E.2d at 874. The object of a trial is the discovery of the truth. A trial judge has the responsibility to direct the trial in a manner which facilitates the ascertainment of that truth. The power to order discovery is "grounded in the inherent power of the trial court to guide and control the proceedings." *Johns* v. *State* (1968), 251 Ind. 172, 240 N.E.2d 60, 64. When a trial judge orders discovery, the party so ordered must do more than point out that the order is unusual or innovative. The State suggests that in respect to supplying relevant grand jury minutes of witnesses who are to testify at trial the expense would be so enormous as to make the ordering of these an abuse of the trial court's discretion. Yet, there are no data offered in support of this claim. Of course, the judge may consider expense as one of the factors applicable to the exercise of his discretion. Nevertheless, criminal discovery is designed to improve the efficiency of the criminal justice system. The idea of a trial as a sport or game is not only a reflection on the judicial process, but it is wasteful of human intelligence and technique. The discovery order was within the discretionary power of the trial judge to guide and control the trial in the best interests of justice. No proof was offered or presented in this case in opposition to the order. There is no showing of an abuse of discretion.

## II.

The Defendant was subject to the following rules of discovery:

"(a) The person of the accused. Upon written motion by the State and subject to constitutional limitations, the Court may require the accused, among other things, to:

    (i) Appear in a line-up;

    (ii) Speak for identification by witnesses to an offense;

    (iii) Be fingerprinted;

    (iv) Pose for photographs not involving reenactment of a scene;

    (v) Try on articles of clothing;

    (vi) Permit the taking of specimens of material from under his fingernails;

    (vii) Permit the taking of samples of his blood, hair and other materials of his body which involve no unreasonable intrusion thereof;

    (viii) Provide a sample of his handwriting; and

    (ix) Submit to a reasonable physical or medical inspection of his body.

(b) Whenever the personal appearance of the accused is required for the foregoing purposes, reasonable notice of the time and place of such appearance shall be given by the State to the accused and his counsel, who shall have the right to be present. Provision may be made for appearances for such purpose in an order admitting the accused to bail or providing for his release.

(c) Medical and scientific reports. Subject to constitutional limitations, the trial court shall, on written motion, require that the State be informed of, and permitted to inspect and copy or photograph, any report or results, or testimony relative thereto, of physical or mental examinations or of scientific tests, experiments or comparisons, or any other reports or statements of experts which defense counsel has in his possession or control, except that those portions of reports containing statements made by the defendant may be withheld if defense counsel does not intend to use any of the material contained in the report at a hearing or trial.

(d) Defenses. Subject to constitutional limitations and within a reasonable time after the filing of a written motion by the State, defense counsel shall inform the State of any defenses which he intends to make at a hearing or trial and shall furnish the State with the following material and information within his possession and control:

    (i) The names and last known addresses of persons he intends to call as witnesses together with

> their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements, any record of prior criminal convictions known to him; and
>
> (ii) Any books, papers, documents, photographs, or tangible objects he intends to use as evidence or for impeachment at a hearing or trial."

The provisions for full disclosure on behalf of both the State and the defendant are not something new. Beginning in 1964, the American Bar Association has drafted standards for criminal discovery which have an even greater scope than those presented in this case. In October, 1971, Illinois adopted rules of discovery as broad as the rules before us in this case. Since 1972, Arizona has been operating effectively with a set of discovery rules based on the A.B.A. standards. All of these rules require disclosure of defenses, names of witnesses, reports and statements of witnesses, examinations, exhibits and other matters relevant to the trial, insofar as they do not violate constitutional limitations. Persons working under these rules and informed as to their operation state publicly that full disclosure results in the elimination of many trials since each side is well-informed as to its position and may look realistically at the probable results of a trial. 56 *Judicature* 279 (February, 1973). More recently, amendments to the Federal Rules of Procedure were adopted for the federal system. 42 L.W. 4553-56. These amended federal rules require disclosure comparable to the A.B.A. standards and those presented for our decision here.

The defendant, however, claims that to compel the disclosure of his witnesses or the type of his defense violates a constitutional right. U.S. CONSTITUTION, Fifth Amendment. The United States Supreme Court has set to rest this argument. *Wardius* v. *Oregon* (1973), 412 U.S. 470, 93 S. Ct. 2208, 37 L. Ed. 2d 82; *Williams* v. *Florida* (1970), 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446.

The *Williams* Court had before it the constitutionality of an alibi-statute. Such statutes, common in many jurisdictions,

require a defendant to disclose prior to trial that he intends to rely on an alibi as a defense and to list the names of witnesses he intends to call at trial to prove the alibi. *See Williams, supra,* 26 L. Ed. 2d at 450, F.N. 11. In upholding such a statute the Court commented: "Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself." *Williams, supra,* 26 L. Ed. 2d at 452. In the later case of *Wardius* v. *Oregon, supra,* the Court refined the principle by holding that there must exist a reciprocity between the discovery rights of the state and those of the defendant. In other words, disclosure requirements must be fairly balanced between the parties. Thus, for example, an alibi statute may not require information only from one side, the defendant, and not balance it with a requirement that the state also give information as to where the alleged crime took place and the names of witnesses who will so testify. In Indiana, the alibi statute is clearly balanced as to the rights of the accuser and the accused in the respects mentioned. IC 1971, 35-5-1-1 through 35-5-1-3 [Burns Ind. Ann. Stat. § 9-1631—35 (1974 Supp.)].

In the *Wardius* case, the Supreme Court stated, concerning the principle of liberal discovery which is now before us, that:

"Notice-of-alibi rules, now in use in a large and growing number of States, are based on the proposition that the *ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial.*

\* \* \*

*The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system.* As we recognized in Williams, nothing in the Due Process Clause precludes States from experimenting with systems of broad

discovery designed to achieve these goals. 'The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for [a rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.' " (Our emphasis) *Wardius, supra,* 37 L. Ed. 2d at 86-87.

Defendant suggests that disclosure of a defense would be, in some situations, an admission of certain elements of a crime and thus incriminating. However, pre-trial discovery to the extent required in the case before us does not eliminate the proof beyond a reasonable doubt standard nor does it shift the burden of proof. The State still must prove to the trier of fact each and every element of the crime charged. Pre-trial discovery merely regulates the timing of disclosures. *Williams, supra.* Absent pre-trial discovery, a defendant can spring a surprise defense and witnesses in support thereof. The State's only recourse is to seek a continuance in order to meet this defense. The discovery procedure simply says that if a defendant chooses to employ a certain defense, perhaps one that admits elements of the crime, the State will not be surprised; the trial will not be delayed.

A second argument to the effect that the defendant is incriminating himself by giving a list of his witnesses and their statements must fall for the same reason. The defendant is not testifying when he gives the names of witnesses who may testify. There is no constitutional provision against compelling witnesses in general to testify. When we consider that it is well-established that the State has a right to fingerprint the defendant, to photograph him, to examine him physically, to take samples of blood, hair and other like materials from his body, and to secure samples of his handwriting, it can scarcely be argued that to ask for a list of witnesses he expects to produce at the trial is an

invasion of his constitutional right against self-incrimination. What was said in *Williams* with respect to alibi-witnesses is applicable to witnesses in general.

"The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. *That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.* The pressures generated by the State's evidence may be severe but they do not vitiate the defendant's choice to present an alibi defense and witnesses to prove it, even though the attempted defense ends in catastrophe for the defendant. However 'testimonial' or 'incriminating' the alibi defense proves to be, it cannot be considered 'compelled' within the meaning of the Fifth and Fourteenth Amendments." (our emphasis) *Williams, supra,* 26 L. Ed. 2d at 451.

The Fifth Amendment is not a bar to any conviction resting on self-incrimination. It prohibits only compelled self-incrimination. These discovery requirements leave to the defendant, who will have the benefit of reciprocal discovery from the State, the ultimate choice of whether to risk self-incrimination.

We think the same rationale applies to the contention that the compelled production of memoranda, books, papers, documents, photographs or tangible objects, medical and scientific reports, or reports or statements by experts which the defense intends to use at trial is a violation of the privilege against self-incrimination.

The key to the entire principle of discovery in criminal cases is that of reciprocity, the balancing of the right to discovery on both sides. We feel that just such a situation exists in the case presented to us. *Wardius* makes the following statement:

"[I]n the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State. *Wardius, supra,* 37 L. Ed. 2d at 88.

We hold, as a matter of state law, that a trial court has the inherent power to balance discovery privileges between parties. Thus, if any statute should deny or fail to provide for full discovery within constitutional safeguards, the trial court may balance the discovery procedure regardless of any omission or prohibition in the statute.

In the past we have been inclined to develop the rights of discovery in more or less a piecemeal manner. Certain members of this Court at times have dissented from decisions requiring discovery on the ground, among others, that the required discovery was not reciprocal. We must concede that the better approach is by rules laying out a broad, well-balanced system of discovery. However, this Court up to this time has not been able to perfect such rules. Since the exigencies of this case require a decision, we have attempted to set forth general principles concerning discovery procedure as a guide for the trial courts of this state until more exact written rules in that area may be promulgated.

For all of the above reasons, the "Verified Petition for Temporary Writ of Prohibition Against Order Compelling Pre-Trial Discovery by State" and the "Verified Petition for Alternate Writ of Mandate or Prohibition Against Order Compelling Pre-Trial Discovery By Criminal Defendant" are denied.

Given, Hunter, Prentice, JJ., concur; DeBruler, J., concurring and dissenting with opinion.

CONCURRING AND DISSENTING OPINION

DEBRULER, J.—I concur in the Court's order denying both petitions for extraordinary relief, but dissent from the affirmance of the discovery order.

I.

The State and the accused complain in their petitions before this Court that the discovery order of the trial judge was too broad and required the disclosure of too much information and information of a privileged nature. Here the burden is upon the petitioners to successfully demonstrate that theirs is a case in which it is appropriate for us to exercise our extraordinary powers. In *State ex rel. Gibson General Hospital* v. *Warrick Circuit Court* (1966), 247 Ind. 240, 214 N.E.2d 655, we set the standards for such a showing as follows:

> "As a general rule, there must be a clear and unquestioned right to relief before mandate or prohibition can be invoked. The determination of complicated legal issues can be done much more satisfactorily in the appeal process, where there is better opportunity for both sides to be represented, where the trial court need not become a party or an advocate, and where the briefing process is much more conducive to a proper legal determination.
>
> Likewise, it is generally required that in order to be entitled to mandate or prohibition, it must be shown that the person seeking it has no adequate remedy other than mandate or prohibition."

It is particularly important in this case to consider whether the right of appeal affords an adequate remedy to petitioners. If we were to exercise jurisdiction to regulate the scope of discovery orders such a decision would substantially increase the number of original actions. A single case may include several discovery orders, each of which could be presented to us by separate petition and at different times. An increasing amount of the judicial resource of this Court would be used in resolving such cases. Neither petitioner has stated specifically in what manner the cast of appellate remedies is insufficient to vindicate the rights each feels has been unlawfully

infringed by the order. Neither has supplied persuasive argument to support the conclusion that appellate review of this allegedly erroneous order is too limited or too late.

It was likewise necessary for petitioners to demonstrate that the order was made without jurisdiction. As I view the claims of both petitioners they are not jurisdictional. The State concedes that some items of information were lawfully ordered disclosed. The defendant does not challenge the rule as it might result in an order to produce scientific or medical reports, or an order to appear for a line up. Both petitions have challenged the scope of the order and rule. This is not jurisdictional under the facts here.

For the reason that neither petitioner has successfully met the burden of demonstrating that this is a case in which this Court should exercise original jurisdiction, I would deny both petitions.

## II.

Following the curious procedure adopted in the majority opinion I must next consider the merits of the parties' legal and constitutional arguments challenging the validity of the discovery order. Having done so, I must conclude that both the State and the accused, appearing as petitioners here, have made *prima facie* showings that the order in its scope is both unlawful and unconstitutional.

The State has pointed out in its well reasoned brief the many ways in which the trial court's order fails to meet the requirements of the present law governing discovery in criminal cases as it has developed in our case law. I do not think that this Court can simply ignore those cases. They are the law alive in the courts handling criminal cases today. Of course this Court can make modification in the law of criminal discovery, but it should not do so except for persuasive reason and while synthesizing the existing law with the new modifications. There is no showing here that limited defense discovery has reduced the ability of the State to carry

out its prosecutorial function. In the foundation case of *Bernard* v. *State* (1967), 248 Ind. 688, 230 N.E.2d 536, we said:

"We do not require that the State lay bare its case in advance of trial nor that the criminal defendant be allowed a fishing expedition."

Yet that is exactly what this order sanctions. This order as I understand it requires the State to open its file to the accused upon a simple unspecific request to do so. In *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N.E.2d 873, and *Dillard* v. *State* (1971), 257 Ind. 282, 274 N.E.2d 387, we set forth specific procedures that the accused must follow in order to successfully move for discovery. The interests of the accused and the State were carefully considered at each step. On the other hand, this order which the majority sanctions, subjects the State, without a showing of particularized need and a showing that the information being sought is not otherwise available to the accused, to a vague and overbroad command the perimeters of which are not discernible, resulting in needless waste, frustration and expense. This is an extension of the discovery rights of criminal defendants in which I do not concur.

The accused contends that the trial court's rule, quoted in the majority opinion, and the order of the trial court infringe his well established right to counsel and his right not to be compelled to testify against himself, under Art. 1, §§ 13 and 14, of the Constitution of Indiana and under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. I can only presume that the majority has found these contentions to be without merit.

Specifically, the accused challenges the requirement of the rule and order which mandates that "trial counsel shall inform the State of any defenses which he intends to make at a hearing or trial." He argues that the "any defenses" rule compels him to incriminate himself. He likewise considers the requirement of the order that he produce witness lists, statements of witnesses, books, papers, memoranda and other

items, for the prosecution, an infringement upon his privilege against self-incrimination. He also contends that the requirement of pre-trial disclosure of defenses deprives him of the guiding hand of counsel. In addition to the Federal constitutional claim, petitioner seeks to invoke the protection of Art. 1, §§ 13 and 14, of the Indiana Constitution. The relevant portion of those provisions provides:

> "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." Art. 1, § 13, Indiana Constitution.

> "No person shall be put in jeopardy twice for the same offense. *No person, in any criminal prosecution, shall be compelled to testify against himself.*" (Emphasis added.) Art. 1, § 14, Indiana Constitution.

No one can seriously question the conclusion that the "any defense" order requires the accused to give that which is testimonial and that which is incriminating or which tends to incriminate. *Haskett* v. *State* (1970), 255 Ind. 206, 263 N.E.2d 529; *Scott* v. *State* (1974), Alaska, 519 P. 2d 774. It is testimonial because the accused could falsify the information supplied to the prosecutor. WIGMORE, § 2264 at 379-80 (1961). It is incriminating because it aids the prosecution in securing a conviction. *McGinnis* v. *State* (1865), 24 Ind. 500. There is a serious question as to whether pre-trial disclosure by the accused under this rule is being "compelled" in the constitutional sense.

The majority rests its case upon the conclusion that the rule in operation does not *compel* the accused to disclose its defense, since the accused can absolutely prevent forced disclosure by giving up his right to obtain pre-trial discovery from the State. It remains to consider Indiana cases which reveal what degree of compulsion, if any, is tolerable under our State Constitution.

In *McGinnis* v. *State, supra,* this Court held that in a prosecution for larceny of bank notes, the State cannot give a notice to defendant to produce the notes. The Court observed that a notice to the defendant to produce a written instrument which he is charged with having stolen would not serve in a criminal case to compel production of that written instrument. The Court stated:

> "It is well settled in criminal cases, that the court cannot compel the defendant to produce an instrument in writing, in his possession, to be used in evidence against him, as to do so would be to compel the defendant to furnish evidence against himself, which the law prohibits. And it is also evident, where the instrument in writing is the subject of the prosecution, and is described in the indictment in such a manner as to give the defendant an advantage on the trial by producing it, that he will do so. The description of the instrument in the indictment must be such that it would always serve to notify the defendant of the nature of the charge against him, save him from surprise, and enable him to be prepared to produce the writing when it was his interest to produce it. But when its production would likely work an injury to the defendant, by aiding in his conviction, it could not be expected that he would produce it in response to the notice. It is, therefore, difficult to perceive what benefit could result, either to the state or the defendant, from the giving of such a notice, while to the defendant it is liable to work a positive injury, by producing an unfavorable impression against him, in the minds of the jury, upon his refusal to produce it after notice."

This is the classic Indiana application of the privilege against self-incrimination. The State has its collection of facts. The defendant has his. If the defendant's evidence is made known to the State, it shall be at a time when the defendant conceives that it is in his interest and chooses to produce it, and at no other. The State in *McGinnis* could not fetter that choice with another choice forced upon him by the notice to produce procedure: namely, whether he would be better off producing the document and facing it at the trial or whether he would be better off to refuse to produce it and to accept the resulting unfavorable impression against him. Under this

classic view, if the accused chooses to disclose testimonial evidence (exculpatory or inculpatory) prior to trial, that choice must be made freely and voluntarily. The *McGinnis* case then shows that Art. 1, § 14, safeguards the time of the decision to disclose and the voluntariness of that decision. Disclosure at the trial shall be at a time when the defendant feels that he shall have an advantage in producing it. Obviously such disclosures must occur before the defense rests its case.

In *Cassidy* v. *State* (1929), 201 Ind. 311, 168 N.E. 18, this Court held that the privilege against self-incrimination in Art. 1, § 14, prohibited a trial judge from questioning an accused at all about his knowledge of the facts, surrounding the charge, in order to determine whether the court should appoint counsel. Important parallels exist between that case and the one at bar. There the trial court at arraignment immediately following a guilty plea, delved into possible defenses. And like the case at bar, the questions and answers were not posed at a trial. The information imparted at the faulty arraignment was not used directly by the trier of fact to determine guilt or innocence, but was used by the trial judge in denying the accused court-appointed counsel. In the case at bar the information is to be given to the prosecution to assist it in countering any defenses. In *Cassidy,* this Court held that the defendant was induced by the Judge's questions to plead guilty and that such plea was therefore involuntary and the accused's motion to set aside the guilty plea should have been granted as violative of Art. 1, § 14. In *Kokenes* v. *State* (1937), 213 Ind. 476, 13 N.E.2d 524, we held that Art. 1, § 14, prohibited the State from using an involuntary confession of the accused as evidence in its case-in-chief. In so holding we observed that denying the State the use of such evidence,

> "works no injury upon the State, since it is contemplated that, when charged with crime, a defendant may stand mute, even when put upon his defense; and that he must be con-

victed upon evidence *other than that furnished by himself, unless he freely and voluntarily elects to give evidence.*" (Emphasis added.)

In Roddy v. State (1970), 254 Ind. 50, 257 N.E.2d 816, we stated:

"There is also a general rule that the statements of a defendant relating to the crime or connected therewith are always competent unless made under *duress* or *threats.*" (Emphasis added.)

If a trial judge calls the defendant to the witness chair at arraignment or at time of entering a plea of guilty and simply interrogates him concerning the alleged criminal acts which he is charged with having committed, such answers are not voluntary. *Batchelor* v. *State* (1919), 189 Ind. 69, 125 N.E. 773. A confession is not voluntary if it is made by reason of fear, threats, intimidation, coercion, fraud or undue influence. *Marshall* v. *State* (1948), 227 Ind. 1, 83 N.E.2d 763; *Rohlfing* v. *State* (1952), 230 Ind. 236, 102 N.E.2d 199. In *Burton* v. *State* (1973), 260 Ind. 94, 292 N.E.2d 790, we held that a statement given to the police by a person in custody would be involuntarily given if there was a showing that it was the result of tricks, threats, cajoling or that the accused was under the influence of drugs. These cases illumine the continued concern of this Court for safeguarding the accused's right not to be compelled to incriminate himself. None of these cases has permitted significant systemized compulsion to be applied upon an accused. Compulsion in the case at bar stems from the restricting of the choice of the accused when preparing his defense.

The need of the defense to have some means of probing and testing the evidence produced in the State's case-in-chief is obvious. Without prior statements of trial witnesses the defense has few effective tools to deal with the flat statements of the witnesses at trial. Without them counsel for defense can only ineffectually test the firmness of the witness' recollection of the experience which that witness is describing

verbally from the witness stand. A fair trial does not occur when counsel for defense is relegated to the oft-fruitless task of trying to show internal inconsistencies in the in-court testimony of the State's witnesses, or questioning blindly in an attempt to establish possible bias and prejudice, while the prosecution's file across the courtroom contains the witnesses' grand jury testimony. It is the effective probing and testing on cross-examination which is at the core of our belief in the efficacy of the adversary trial as being the best system of getting at the truth. Without effective probing and testing, there is no clash of fact or statement. It must be concluded that this need of the defense to have pre-trial disclosure from the prosecution and to acquire the means of conducting a decent cross-examination places a considerable pressure upon the accused to relinquish his privilege against self-incrimination and thereby satisfy that need. This is not the free and voluntary relinquishment of a right. This right is being extracted from the accused for a benefit extended by the State.

If the Constitution sanctions this procedure, it would sanction a waiver given by the accused in return for an investigator to assist the defense at public expense, in return for a daily trial transcript at public expense, or in return for an expert witness to serve the defense. I do not believe that our Indiana Constitution tolerates the waiver of the privilege against self-incrimination under these terms.

### III.

Sections 13 and 14, of our Constitution erect for Indiana a prosecutorial system and reject an inquisitional one. The broad reciprocal discovery rule being challenged by both the State and the accused here will, in practical operation, transform this system from an essentially adversary one into one in which the values inherent in the adversary system are substantially impaired. The adversary system in its ideal conception is one which is fair and can be trusted because

.the roles of counsel are clearly opposing and personally protective of the individual party. Appearing before the impartial tribunal each counsel skilfully marshalls the facts in a manner which places his client in the most favorable light. Each addresses the legal issues and provides the court with considerations he deems relevant to their just resolution. From this clash of fact and legal argument, conducted in a reasonable manner, we believe that a reliable reconstruction of events and a fair judgment will be produced. This is the system to which we are accustomed. This is the system which we trust will guard each of us. It should be refined and encouraged. In the cases of *Bernard, Antrobus* and *Dillard,* the interests of the State and the accused were carefully considered and balanced to the end that the adversary system be not severely hampered in its operation. Those cases and the principles they relied upon responded to the commands of the Constitution that ours be an adversary system. The trial court's rule does not so respond. The adversary system was enhanced by the limited defense discovery which recent cases have provided. Underlying these cases was a recognition that the State has an advantage over the accused through its use of the subpoena power, the grand jury, and the right to make reasonable searches and seizures for discovery purposes, and through the use of the police as an investigative resource to obtain statements. In those cases, we intended to, and I believe in fact did, establish a *balance* between the rights of the accused and the State to obtain pre-trial discovery, and at the same time maintained the essential values of the adversary system. The rule challenged here does neither of these things. This rule can have two results.

1. The accused will decide not to seek disclosure from the prosecution and the case will be tried under pre-*Bernard* rules, which this Court has condemned, or,

2. The accused will seek pre-trial disclosure from the State, resulting in each side opening its files. An increasing number of these cases will be resolved by plea bargaining.

In the latter instance, greater and greater discrepancies in the scenarios revealed in the two files will become resolvable by plea bargaining as both counsel become less and less interested in pressing their views to trial, and therefore getting at the truth. Once the defense is revealed to be empty handed, the police and prosecutors will cease their investigative efforts and be content to rely upon the edge revealed. Such developments will not enhance the "search for truth".

On these bases, I would keep our present system of limited defense discovery and reject the rule of broad reciprocal discovery.

NOTE.—Reported at 317 N.E.2d 433.