370 N.E.2d 912 (1977)
Paul Elmer OTTINGER, Appellant,
v.
STATE of Indiana, Appellee.
No. 1-177A12.
Court of Appeals of Indiana, First District.
November 21, 1977.
*914 Peyton & Giddings, Lebanon, for appellant.
Theodore L. Sendak, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellee.
LYBROOK, Judge.

MEMORANDUM DECISION
Defendant-appellant, Paul Elmer Ottinger, appeals his conviction of second degree burglary[1] and presents the following issues for review:
(1) Whether the trial court erred in refusing to allow Ottinger to call two witnesses disclosed to the State on the day of trial.
(2) Whether the trial court erred in sustaining the State's objection to Ottinger's questioning a witness during the defense case who had testified during the State's case in chief.
(3) Whether the trial court erred in overruling a motion for mistrial during cross-examination of Ottinger.
Ottinger was discovered inside Shepherd's Drive-In Restaurant in Lebanon at 2:00 a.m., on January 24, 1976, when the owner checked the premises. A window had been broken at the northwest corner of the building. Candy, strawberries, ice cream, whipped cream, and canceled checks were scattered throughout the establishment. When the police arrived to take Ottinger into custody, they discovered chewing gum and fifteen candy bars, identical to merchandise offered for sale by Shepherd's Drive-In, in Ottinger's pockets. A jury found Ottinger guilty of second degree burglary.

I.
In its Interrogatories to defendant the State asked for the names and addresses of persons Ottinger intended to call as witnesses. Ottinger answered: "None."
After the State rested its case in chief, the deputy prosecutor and defense counsel addressed the court out of the presence of the jury. The ensuing exchange revealed that defense counsel intended to call two witnesses; the State objected because the State had not been told about the proposed witnesses before the morning of trial. The State emphasized that it did not seek a continuance but again objected to the two persons being called as witnesses. The trial court refused the testimony.
Ottinger argues that the trial court should have granted a continuance for the benefit of the State rather than rejecting the testimony of the two proposed witnesses. Ottinger claims that, by its ruling, the trial court abused its discretion, pressured him to take the stand on his own behalf,[2] and deprived him of his right to present a defense.
Ottinger's argument rests upon the premise that the appearance of Donna Ottinger (appellant's wife) and Teresa Woerner in defense counsel's office on the morning of trial amounted to newly discovered evidence. This premise is fallacious.
The record reveals that Ottinger's proposed witnesses would have testified that Ottinger was under the influence of alcohol, *915 "among other things," at the time he entered Shepherd's Drive-In Restaurant. Ottinger was well aware that he had been drinking before he entered the restaurant, and he was also aware of at least some of the persons who could so testify. Ottinger's testimony reveals his recollection that:
(a) He started drinking beer about 10:00 a.m. on January 23, 1976, and continued until 5:00 p.m.;
(b) When people arrived for "a little party," he joined them in drinking more beer and in drinking a pint of whiskey;
(c) The group at the "little party" also smoked marijuana and took barbituates.
Ottinger obviously had knowledge of the evidence rejected by the trial court. He had in excess of eight months to relate the information to his attorney and to prepare a defense incorporating that evidence. Although he answered the State's Interrogatories on March 29, 1976, by stating that he intended to present no witnesses, he had more than six months to amend that answer. Instead, Ottinger made no effort to notify the State concerning his change in plans until the morning of trial.
In State v. Buza (1975), Ind. App., 324 N.E.2d 824, the State submitted a second amended witness list on the day before trial. The trial court granted defendant's motion to strike the second amended list and allowed the State to present testimony only of the witnesses listed before the second amendment. The State argued on appeal that a continuance is the exclusive remedy when an attempt is made to call a surprise witness. This court disagreed with the State's contention, and held that stronger remedies may be employed when the circumstances demand.
In the present case, it was Ottinger's witnesses, not the State's witnesses, who were barred from testifying. Ottinger contends that he was denied his constitutional right to present a defense.
In Washington v. State of Texas (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, the defendant was not allowed to present testimony of a witness because a state statute made inadmissible the testimony of persons charged as principals, accomplices, or accessories in the same crime. The United States Supreme Court first determined that the right of an accused to have compulsory process for obtaining witnesses is a fundamental right incorporated in the due process clause of the Fourteenth Amendment. The Supreme Court then defined the more specific issue:
"We are thus called upon to decide whether the Sixth Amendment guarantees a defendant the right under any circumstances to put his witnesses on the stand, as well as the right to compel their attendance in court." (Emphasis added). 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019.
Having considered the guidelines provided by Washington v. State of Texas, supra, we must now determine whether Ottinger was denied his right to present defense witnesses because of arbitrary procedural rules.
Both the United States Supreme Court and our Indiana Supreme Court have approved liberal discovery in criminal proceedings. Wardius v. Oregon (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82; Williams v. Florida (1970), 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446; State ex rel. Keller v. Criminal Court of Marion County (1974), 262 Ind. 420, 317 N.E.2d 433. The trial court has discretion in imposing sanctions regarding discovery. State v. Buza, supra.
We emphasize that we do not deal with a situation involving evidence which became known for the first time on the morning of trial, as Ottinger argues. Instead, our conclusion emanates from analysis of the situation revealed by the record. We find that the sanction imposed by the trial court was within its power. The trial court's ruling gives meaning to the procedures and purposes of pretrial discovery; any limitations which resulted upon Ottinger's right to present a defense were the product of his answer to the interrogatory and his apparent election not to amend that answer at any time before the morning of trial. Ottinger cites no cases which suggest *916 violations of the Sixth Amendment of the United States Constitution or of Article 1, § 13, of the Indiana Constitution, by the trial court's ruling. The trial court did not err when it refused to allow the testimony of Donna Ottinger and Teresa Woerner.
Ottinger intertwines two ancillary arguments within this issue. Interrogatories to the State, filed February 4, 1976, asked whether the State had received any evidence which might be exculpatory. The State responded on February 26, 1976: "None." In May of 1976, Donna Ottinger went to the prosecutor's office to discuss the possible dissolution of her marriage to Paul Ottinger, appellant herein. During the consultation, she stated that her husband was intoxicated when he entered Shepherd's Drive-In Restaurant.
Ottinger argues that the State had a duty to supplement its answer to the interrogatory and disclose Donna Ottinger's statement, and cites as authority, Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.
Conviction of second degree burglary requires the State to prove a breaking and entering of a building or structure other than a dwelling house with intent to commit a felony therein. Cook v. State (1972), 258 Ind. 667, 284 N.E.2d 81. A defendant may be intoxicated to the extent that he lacks the mental ability to form specific intent. Stout v. State (1974), 262 Ind. 538, 319 N.E.2d 123. Therefore, if Ottinger were sufficiently intoxicated to have been unable to form specific intent when he entered Shepherd's Drive-In Restaurant, evidence of such intoxication would amount to exculpatory evidence.
Brady v. Maryland, supra, is not germane to the facts revealed by the record. The State has a duty to disclose to a defendant any evidence which tends to exculpate him. This duty exists independent of any specific discovery proceedings or court order. Monserrate v. State (1976), Ind., 352 N.E.2d 721. Donna Ottinger's consultation in the prosecutor's office disclosed no information unknown to Ottinger. Therefore, allegations that the State suppressed evidence are spurious.
Finally, Ottinger argues that his witnesses should have been allowed to testify since the State was already aware of the facts to which Donna Ottinger and Teresa Woerner would have testified. The trial court heard from both attorneys before making its ruling.
The trial court has discretion in conducting its proceedings. We find no evidence of abuse of that discretion. While Ottinger disagrees with the trial court's view of the facts, the following statement in his brief reveals agreement with the trial court's reasoning:
"Certainly, a motion to strike witnesses is an appropriate remedy where the movant was misled by the opposing party's action and where there is no justification for submitting a late witness list."
We state again that the trial court did not err when it refused to allow the testimony of Donna Ottinger and Teresa Woerner.

II.
Officer Edward Watson testified as a witness for the State and was cross-examined by defense counsel. After the trial court rejected the testimony of Donna Ottinger and Teresa Woerner, defense counsel called Officer Watson as a witness. After asking two preliminary questions, defense counsel stated:
"All right. Now, I'd like to have some information regarding activities that you took with respect to this incident after transporting the defendant to jail."
The State objected to the testimony because Officer Watson was not listed as a witness for Ottinger.
Ottinger argues that the State waived objection by allowing Officer Watson to take the stand again and answer the two preliminary questions. We disagree. Officer Watson first responded that he understood he was still under oath; his second answer stated the approximate hours he was on duty January 24, 1976. The State permitted no testimony that could not have been elicited during cross-examination. When defense counsel attempted to extend examination of the witness beyond those bounds, the State promptly objected.
*917 The record reveals statements by defense counsel suggesting that Officer Watson was called as a witness for Ottinger because Donna Ottinger and Teresa Woerner were not allowed to testify. Officer Watson testified during cross-examination, however, that he had no opinion as to whether or not Ottinger was under the influence of any substance. Even the allegations of newly discovered evidence, therefore, fail to explain the last-minute attempt to call Officer Watson as a witness for Ottinger. For the reasons stated previously, we find that the trial court did not err in limiting Ottinger to the trial strategy he imposed upon himself.

III.
During cross-examination of Ottinger, the following exchange took place:
"Q. Paul, were you convicted in Boone Superior Court in cause No. 6203 and sentenced on May 27, 1975 for entering to commit a felony?
A. Yes, sir.
Q. And were you sentenced to the Indiana State Farm for a period of a year?
A. Yes, sir.
Q. And were you placed on probation for 2 years?
A. Yes, sir.
Q. And is doing drugs like you were doing in violation of your parole, your probation?
MR. PEYTON: Your Honor, at this time I'd like to make a motion out of the presence of the jury."
After the jury was excused, defense counsel moved to strike responses regarding the prior conviction, and he also moved for a mistrial. The court denied the motion for mistrial. When the jury returned, the court admonished the jury to disregard all questions and evidence regarding probation. The only additional reference in this regard was the following exchange when cross-examination of Ottinger resumed:
"Q. The offense in Superior Court was entering to commit a felony, to-wit: theft, was it not?
A. Yes, sir."
Ottinger alleges error in three aspects of the questioning set forth above. He argues that:
(1) reference to the use of drugs was not proper for challenging his credibility;
(2) reference to a conviction for entering to commit a felony (theft) was not permissible for challenging his credibility;[3]
(3) "the prosecutor's questioning was calculated as an `evidentiary harpoon' to leave an adverse inference on the jury."
When a defendant takes the witness stand, the State may cross-examine him concerning his credibility, but this attack on credibility is limited. The general rule in Indiana is that "the State is not permitted to inquire into specific acts of misconduct other than prior convictions." Hensley v. State (1971), 256 Ind. 258, 268 N.E.2d 90. Ottinger argues that the State improperly inquired as to specific acts of misconduct and thereby denied Ottinger his right to a fair and impartial trial.
Ottinger testified on direct examination that he had smoked marijuana and taken barbiturates at the party preceding his arrest. The reference in the state's question to drugs, therefore, did not introduce a new subject directed solely to credibility.
Our Supreme Court stated the general rule in Martin v. State (1974), 261 Ind. 492, 306 N.E.2d 93:
"[T]he rule is well established that once a party opens up a subject on direct examination, he cannot close the subject to cross-examination at his own convenience." (Citations omitted).
After Ottinger introduced on direct examination evidence concerning his drug usage, *918 the State could properly pursue the subject during cross-examination.
Ashton v. Anderson (1972), 258 Ind. 51, 279 N.E.2d 210, provides that, to serve as a basis for impeachment of a witness' credibility, a prior conviction must be for (a) a crime involving dishonesty, or (b) a crime involving false statement, or (c) a crime which renders a witness incompetent (treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, and wilful and corrupt perjury).[4]
In Fletcher v. State (1976), Ind., 340 N.E.2d 771, our Supreme Court determined that proof of a prior theft conviction is admissible to impeach credibility because theft is a crime involving dishonesty or false statements.
The elements to be proved for conviction of the offense of entering with intent to commit a felony are: (1) an entry into certain types of enclosures (2) with a contemporaneous intent to commit a felony therein. IC 1971, XX-XX-X-X (Burns Code Ed.); Chapman v. State (1975), Ind. App., 321 N.E.2d 863. Because proof of specific intent is required for conviction of the crime of entering to commit a felony (theft) as well as for conviction of the crime of theft, we conclude that dishonesty is involved in the commission of both crimes. Therefore, reference to the prior conviction to impeach Ottinger's credibility was proper.
Ottinger argues that the questioning amounted to an evidentiary harpoon. We have determined that the questions concerning drug usage and prior conviction were proper. Ottinger offers no argument concerning reference to probation, so we do not consider that aspect. Issues not argued in the brief are deemed waived. Indiana Rules of Appellate Procedure, Rule 8.3(a)(7); Berridge v. State (1976), Ind. App., 340 N.E.2d 816.
In Block v. State (1976), Ind., 356 N.E.2d 683, appears this apposite statement:
"Because this testimony was admissible, talk of an `evidentiary harpoon' here is misplaced. An [evidentiary] harpoon, as we have used the term in the past, involves improper evidence deliberately introduced by counsel to prejudice the jury, the effect of which cannot be corrected by an admonition by the trial court. White v. State (1971), 257 Ind. 64, 272 N.E.2d 312. While there is little doubt that the evidence here was prejudicial and that it was deliberately introduced, it was proper evidence."
Whether circumstances require the withdrawal of a case from the jury and the discharge of the jury on the basis of a motion for mistrial rests in the sound discretion of the trial judge. Duke v. State (1968), 249 Ind. 466, 233 N.E.2d 159. Ottinger has totally failed to show any abuse of that discretion in this case.
Appellant having failed to demonstrate reversible error in the trial proceedings, judgment is hereby affirmed.
Affirmed.
ROBERTSON, C.J., and LOWDERMILK, J., concur.
NOTES
[1] IC 1971, XX-XX-X-X(b) (Burns Code Ed.).
[2] The State did not challenge Ottinger's decision to take the stand in contravention of his answer to the interrogatory.
[3] Defense counsel failed to object until after the questions concerning a prior conviction had been answered. Although he moved to strike the questions and answers, he offered no excuse for failure to make timely objection. This court could properly rule that the objection was waived. Sawyers v. State (1976), Ind. App., 341 N.E.2d 810. Our election to consider the argument on the merits should not be construed as approbation for tardy objections.
[4] IC 1971, XX-X-XX-XX (Burns Code Ed.).