STATE OF INDIANA ON THE RELATION OF
GILBERT E. GRAMMER, JR. *v.*
THE TIPPECANOE CIRCUIT COURT AND
WARREN B. THOMPSON, AS JUDGE OF SAID COURT.

[No. 478S74. Filed July 11, 1978.]

*John H. Meyers,* of Lafayette, *George J. Heid,* of Lafayette, for relator.

HUNTER, J.—This matter is before us on an action for writ of prohibition and writ of mandate concerning criminal discovery techniques. Gilbert Grammer, Jr., was charged by information with second-degree murder on September 14, 1977.

The discovery matters began with a routine Motion for Pre-Trial Discovery filed by the defendant and a routine Response to Discovery filed by the prosecuting attorney. The response included a list of witnesses, a list of the physical evidence obtained by the state, copies of police reports, and a copy of defendant's statement.

Defendant then filed extensive Interrogatories to be answered by the prosecuting attorney on October 17, 1977. The state has never answered these interrogatories but did file a belated Motion for Protective Order which was granted on February 15, 1978. The defendant also filed a Request for Admissions on November 30, 1977. This Request was denied by the trial court as not applicable to criminal cases.

Defendant now contends that it was error for the trial court to grant the protective order because it was filed three

months after the deadline for filing objections to interrogatories as set out in Indiana Rule of Trial Procedure 33. He also contends that Ind. R. Tr. P. 36 does apply to criminal cases. The defendant is obviously arguing for extremely *radical* pretrial discovery in criminal cases which has never been previously allowed either in this state or under the federal rules.

It is true that there has recently been an expansion of criminal discovery practices. This Court has established that the trial court has the inherent power, within certain limitations, to order various types of discovery in criminal cases, *Antrobus* v. *State,* (1970) 253 Ind. 420, 254 N.E.2d 873; *Bernard* v. *State,* (1967) 248 Ind. 688, 230 N.E.2d 536; Ind. R. Crim. P. 21.

It is also clear, however, that discovery in favor of a criminal defendant is *not* required by the constitutional guarantee of due process. *Wardius* v. *Oregon,* (1973) 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82; *Bernard* v. *State, supra.* Therefore, one of the paramount factors in criminal discovery in this state is the discretion of the trial court in ordering disclosures and balancing the discovery privileges between the parties, *State ex rel. Keller* v. *Criminal Court of Marion County,* (1974) 262 Ind. 420, 317 N.E.2d 433.

The use of depositions and motions to produce has been upheld in criminal cases under appropriate circumstances, *Murphy* v. *State,* (1976) 265 Ind. 116, 352 N.E.2d 479; *Carroll* v. *State,* (1975) 263 Ind. 696, 338 N.E.2d 264; *State ex rel. Keller, supra.*

The use of interrogatories in criminal proceedings was not brought up until 1976 in *Gutowski* v. *State,* (1976) Ind. App., 354 N.E.2d 293. Gutowski had filed written interrogatories to be answered by the complaining witness. The trial court ruled that the witness need not answer the interrogatories and the Court of Appeals upheld this. However, the court pointed out that its holding was based on Gutowski's waiver of pretrial

discovery by his failure to pursue his rights with diligence. The court made no clear general ruling on the use of interrogatories in criminal cases.

In considering the use of interrogatories in the present case, it is necessary to keep in mind the different purposes to be served by discovery in civil and criminal cases. A primary purpose of civil discovery is a narrowing of the issues and interrogatories are often used for this purpose. Interrogatories are seldom employed as a complete discovery device but are usually used in preparation for more detailed requests. However, in a criminal case, the charging information must be very specific. It is required to state "the nature and elements of the crime charged in plain and concise language." Ind. Code § 35-3.1-1-2(a)(4) (Burns 1975). Since a criminal case starts in such a specific manner, it is not necessary in most instances to use the overbroad device of interrogatories to narrow the issues.

Furthermore, while interrogatories are a relatively inexpensive discovery device, they have been recognized as cumbersome and not suitable for complicated factual situations. Repititious interrogatories are the most abused of all discovery devices and often become tools for harassment. *Costanzi* v. *Ryan*, (1978) Ind. App., 370 N.E.2d 1333; 2 HARVEY: INDIANA PRACTICE 682.

In considering the use of any discovery device the trial court must keep in mind the goals of facilitating the administration of criminal justice and promoting the orderly ascertainment of the truth. As the United States Supreme Court has said, "increasing the evidence available to both parties, enhances the fairness of the adversary system." *Wardius, supra,* at 412 U.S. 474.

It appears to us that the use of interrogatories in criminal trials will not usually advance either of these goals. At the time a criminal charge is filed, the prosecution ordinarily knows or can readily ascertain the evidence available to it. This evidence is usually reported in

written form and can be made available to the defense with a minimum of effort. In the overwhelming number of cases, production of these materials is sufficient to satisfy the goals of discovery. Most significantly, except in rare cases, the only person who definitely knows the truth of the charge is the accused. Therefore, the most valuable source of information belongs exclusively to the defense after counsel is appointed.

In the case at bar the extensive use of interrogatories approaches or equals the ridiculous. The defendant had already been give an adequate response to discovery including a list of the state's witnesses, copies of police reports and a copy of defendant's statement. The use of repetitious questions directed to the prosecutor is not only inefficient but is unreasonable and oppressive. The questions could all have been more appropriately and efficiently asked of the defendant himself or of the specific witnesses.

We are setting out the interrogatories in toto to indicate the *absurdity* of the defendant's requests:

"*Interrogatory No. 1:* State the conduct of the defendant that gave rise to his initial arrest.

*Interrogatory No. 2:* If the defendant's arrest was made without a warrant, state exigent circumstances justifying not obtaining a warrant?

*Interrogatory No. 3:* State when and where and by what law enforcement officer or officers the defendant was arrested.

*Interrogatory No. 4:* What length of time elapsed between the defendant's arrest and his first appearance before a magistrate?

*Interrogatory No. 5:* Before what magistrate was the defendant first taken after his arrest?

*Interrogatory No. 6:* When, where and by whom was the defendant advised of his constitutional rights?

*Interrogatory No. 7:* With reference to the answer to int. 6, name every person who was present at the time or times the defendant was advised of his constiutional rights.

*Interrogatory No. 8:* With reference to the answer to int. 6, state specifically what rights the defendant was advised-of on each occasion the rights were given.

*Interrogatory No. 9:* With reference to the answer to int. 6, did the defendant ever acknowledge he was advised of his rights, and, if so, how and when was the acknowledgement made and to whom?

*Interrogatory No. 10:* State whether the defendant ever waived any of his constitutional rights.

*Interrogatory No. 11:* With reference to the answer to int. 10, if the defendant did waive his rights, state specifically what rights were waived?

*Interrogatory No. 12:* With reference to the answer to int. 10, if the defendant did waive his rights, state specifically how and when the waiver was made and with whom.

*Interrogatory No. 13:* State whether the defendant was ever personally searched.

*Interrogatory No. 14:* With reference to the answer to int. 13, if the defendant was personally searched, what evidence was seized as a result of that search?

*Interrogatory No. 15:* State whether the defendant's residence was ever searched.

*Interrogatory No. 16:* With reference to the answer to int. 15, if the defendant's residence was searched, what evidence was seized as a result of that search or searches?

*Interrogatory No. 17:* With reference to the answer to int. 15, if the defendant's residence was searched, state when, where and by whom the search was effectuated.

*Interrogatory No. 18:* With reference to the answer to int. 15, if the defendant's residence was searched, state whether the search or searches was made with benefit of a warrant, or the defendant's consent, state the exigent circumstances that justified a search without obtaining a warrant or consent, if no warrant or consent was obtained.

 a. If a search warrant was obtained, state when and by whom it was obtained.

 b. If a search warrant was obtained, state the grounds that justified the search warrant's issuance.

 c. If the search was based upon consent, state the individuals that gave the consent; state to whom, when and where such consent was given; describe any document purporting to contain such consent; and state the person who was present when the consent was given.

*Interrogatory No. 19:* State when, if ever, the defendant first demanded presence or assistance of counsel, and state what he was told and what was done and by whom in response to that demand for counsel.

*Interrogatory No. 20:* State the nature and contents of any statement or confession made by the defendant after he was taken into custody, besides that statement described in the report of 'Mahlke,' Lafayette Police Department, dated '8/30/77,' which was attached to the 'Response to Discovery,' which was delivered to counsel for the defendant by John R. O'Bryan, Deputy Prosecuting Attorney on September 27, 1977.

*Interrogatory No. 21:* With reference to the answer in int. 20, if a statement or confession was made, state when it was made and to whom, the name of every person who was present at the time it was made, and whether it was written or taken down in writing by any other person or tape-recorded, and where the statement or confession or evidence of it can be found at this time.

*Interrogatory No. 22:* State the name and present or last known address of every person who will be called to testify for the state at the defendant's trial, besides the names of prospective witnesses listed in the 'Response to Discovery' which was delivered to counsel for the defendant by John O'Bryan, Deputy Prosecuting Attorney, on September 27, 1977.

*Interrogatory No. 23:* State the nature of the testimony which is expected from each person that will testify for the state in the defendant's trial.

*Interrogatory No. 24:* State the nature and contents of every tangible object or document which the state expects to introduce into evidence against the defendant at trial.

*Interrogatory No. 25:* State the nature and contents of every tangible object or document which is relevant to the crime charged against the defendant which the state does not intend to use at the defendant's trial.

*Interrogatory No. 26:* State the name and present or last known address of every person who has relevant knowledge of the crime charged against the defendant who will not be called to testify for the state at the defendant's trial.

*Interrogatory No. 27:* With reference to the answer to int. 26, state the nature of the information that the state believes to be held by each person named.

*Interrogatory No. 28:* State whether any promises or leniency or other benefits have been made to any perspective [sic] witness for the state in the trial against the defendant. If such promises have been made, state the names and addresses of the persons to whom they were made, the nature of each promise, and the names of all persons who would have knowledge of such promise or promises.

*Interrogatory No. 29:* State the criminal history of each witness that the state intends to call to testify in the trial against the defendant, including but, not limited to, prior convictions and present pending charges. State whether any prospective witnesses are under investigation or are prospective defendants with respect to cases that have not yet been filed.

*Interrogatory No. 30:* State whether there are any reports or statements of experts, made in connection with the investigation of the crime alleged against the defendant, including but not limited to, results of physical or mental examinations; of autopsies, comparisons or analyses by pathologists, physicians or anthropologists; or of scientific tests, experiments or comparisons.

*Interrogatory No. 31:* With reference to the answer to int. 30, state the names and present or last known addresses of the persons making such reports or statements, whether the state intends to use any or all of those reports or statements in the trial against the defendant; and state the qualifications of the experts that the state may call to testify at trial that entitles those experts to be qualified as experts on the matter on which they may be called to testify.

*Interrogatory No. 32:* With reference to the experts named in the answer to int. 31, state whether the experts may receive, will receive or have received any renumeration, honorarium or other benefits from the state in return for their services prior to trial or as witnesses in the trial against the defendant.

*Interrogatory No. 33:* With reference to the answer to int. 30, state in whose custody those reports or statements are now held.

*Interrogatory No. 34:* State whether the state intends to use any books, papers, documents, photographs or other tangible objects at any hearing or trial which were obtained from or belonged to the defendant and, if so, identify those prospective exhibits and state in whose custody those prospective exhibits are now held.

*Interrogatory No. 35:* State whether there are any reports respecting fingerprints made in connection with the investigation of the crime alleged against the defendant; and, if so, list the fingerprints found in the investigation noting the places that they were found; by whom the fingerprints were found; whether any analyses or comparisons have been made of the fingerprints; by whom such analyses or comparisons were made; the qualifications that may entitle the person making such analyses or comparisons to be

qualified as an expert in testifying regarding the analyses or comparisons; and whether the State of Indiana intends to use any of the analyses or comparisons in the trial against the defendant.

*Interrogatory No. 36:* State whether any fingerprints were taken from the alleged murder weapon and from the shotgun purportedly found on front porch of the defendant's house on the night of the killing. If no fingerprints were taken from either weapon, state the reasons that none were taken and whether an attempt was made to take the fingerprints from those weapons. State whether the weapons have been maintained in such a fashion that it would still be possible to take fingerprints from either of those weapons. State in whose custody those weapons are now being held, if such information has not been stated previously.

*Interrogatory No. 37:* State the chain of such custody of any fungible object or exhibit that the state intends to use in evidence at the trial against the defendant.

*Interrogatory No. 38:* State any and all information and evidence that tends to negate the guilt of the defendant, to mitigate the degree of offense or to reduce the punishment.

*Interrogatory No. 39:* State the relevant evidence, and the persons who will testify to it, that the defendant killed the decedent purposely and maliciously.

*Interrogatory No. 40:* State the relevant evidence, and the person(s) who will testify to it, that the defendant's actions caused the death of the decedent.

*Interrogatory No. 41:* State the means by which the defendant caused the decedent's death.

*Interrogatory No. 42:* State the evidence that the defendant's killing of the decedent did not occur 'in a sudden heat.' "

While it is true that criminal discovery has been expanded by allowing various civil discovery techniques to be applied to criminal cases, the very nature of the criminal case setting belies the wisdom of an indiscriminate application of civil discovery procedures. We cannot allow interrogatories to be used as a device to force the state to formulate material already available as a matter of public record. We have consistently held that it is not the duty of the prosecutor to bear the burden of assembling the defense counsel's evidence. *State* v. *Wright,* (1978) 267 Ind. 590, 372

N.E.2d 453; *Ortez* v. *State*, (1975) 165 Ind. App. 678, 333 N.E.2d 838; *Bernard, supra.*

Interrogatories are never proper in a criminal case when their function can be served by another, previously recognized discovery technique. Furthermore, the use of interrogatories must be strictly controlled in criminal cases and should only be used under exigent circumstances. There was no error in the instant case in granting the protective order of the state since no exigent circumstances were shown and the information asked for in the interrogatories could have been obtained through the use of other, established discovery techniques. The defendant cannot complain about the timeliness of the filing of the motion for a protective order since the interrogatories were incorrectly used. Furthermore, since criminal discovery is largely discretionary, the trial court is not necessarily bound by the limiting language contained in the civil rules, *Gutowski, supra,* and *State ex rel. Keller, supra.*

The second error alleged by the defendant is the denial of his Request for Admissions. The request for admissions is used in civil cases as a device to get uncontested facts out of the way. It is unnecessary to use this device in criminal cases as there is already a mechanism established for this purpose. Ind. Code § 35-4.1-3-1 (Burns 1975) provides for an omnibus hearing and pretrial conference. At the time of this hearing, the statute provides:

> "[T]he court, upon motion of any party or upon its own motion, may order one or more conferences * * * to consider any matters related to the disposition of the proceeding including the simplification of the issues to be tried at trial and the possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof."

Ind. Code § 35-4.1-3-1 (b).

Furthermore, the prosecutor is under the constitutional duty to disclose any exculpatory evidence to the defense. *United States* v. *Agurs,* (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.

2d 342; *Brady* v. *Maryland*, (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. There was no abuse of discretion in the denial of the request for admissions.

For all the foregoing reasons there was no error in the orders and rulings of the trial court in this case.

Therefore the petition and the relief requested in this original action are denied.

Givan, C.J., Prentice and Pivarnik, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 377 N.E.2d 1359.