WALTER MURPHY *v.* STATE OF INDIANA.

[No. 975S245. Filed August 10, 1976. Rehearing denied September 30, 1976.]

*Geoffrey A. Rivers,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *John D. Shuman,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of robbery while armed[1] and sentenced to im-

---

1. 35-12-1-1 [10-4709]. Commission of or attempt to commit crime while armed with deadly weapon.—Any person who being over sixteen [16] years of age, commits or attempts to commit any felony while armed with any dangerous or deadly weapon, or while any other person is present and aiding or assisting in committing or attempting to commit such felony is armed with any dangerous or deadly weapon, shall be guilty of a separate felony and upon conviction shall be imprisoned for [a] determinate period of not less than ten [10] years nor more than thirty [30] years. The penalty imposed by this chapter [section]

prisonment for a determinate period of thirteen (13) years. His motion to correct errors raised twenty-one issues, four of which have been expressly waived. By grouping of related issues, the remaining seventeen have been reduced to eleven distinct questions, two of which must be resolved in the defendant's favor and require that a new trial be ordered. One has been rendered moot, and we regard two others as unlikely to resurface upon the re-trial, leaving the following eight issues to be treated herein.

## ISSUES

(1) Correctness of the trial court's denial of the defendant's motion to depose certain of the State's listed witnesses.

(2) Correctness of the court's action in giving an instruction relating to drug influence as a defense.

(3) Correctness of the trial court's ruling denying the defendant's motion for examination by a psychiatrist of his choice.

(4) Correctness of the trial court's denial of the defendant's petition for treatment as a drug abuser.

(5) Defendant's entitlement to a bifurcated trial.

(6) Did the trial court err in denying the defendant's motion to discover his statements made to the police at the time of his arrest?

(7) Sufficiency of the evidence upon the issue of the defendant's sanity.

(8) Constitutionality of the sentencing provisions of the statute under which the conviction was obtained.

---

is to be fixed by the court or jury trying the case, which sentence the court shall not have the power to suspend: Provided, That such court shall have the right to provide in the judgment that such term of imprisonment shall not run concurrently with any imprisonment that may be adjudged for any additional crimes being attempted or committed at the same time but that such term of imprisonment shall commence at the expiration of the imprisonment adjudged for any such additional crimes. [Acts 1929, ch. 55, § 1, p. 139; 1965, ch. 298, § 1, p. 819; 1969, ch. 206, § 1, p. 771; 1971, P.L. 453, § 1, p. 2092.]

## ISSUE I

The defendant was arraigned on February 11, 1975, and trial was set for April 7, 1975. On March 21, 1975, leave for previously appointed pauper counsel to withdraw was granted and substitute pauper counsel appeared on March 26, 1975, and moved for a continuance of the trial date. Accordingly the trial was reset for April 28, 1975. On April 7, 1975, counsel filed a motion for an order authorizing the taking of depositions, at public expense, of certain of the State's listed witnesses. On April 22, 1975, the motion for depositions had not yet been ruled upon, and counsel moved for a further continuance of the trial date, whereupon the motion for the depositions was overruled, other pending motions were ruled upon, and the motion for a continuance was overruled.

Although arguments of counsel were heard upon the motion for depositions, the record does not reflect the State's objections or the court's reason for denial. Absent a showing that the defendant had no legitimate defense interest in support of his petition or that the State had a paramount interest to protect, criminal defendants have a right under our statute and rules of procedure to discovery, including the taking of depositions from those persons listed as State's witnesses. *Johnson* v. *State,* (1971) 255 Ind. 589, 266 N.E.2d 57; *Howard* v. *State,* (1969) 251 Ind. 584, 244 N.E.2d 127; *Amaro* v. *State,* (1968) 251 Ind. 88, 239 N.E. 2d 394; *Nuckles* v. *State,* (1968) 250 Ind. 399, 236 N.E. 2d 818. *See also Antrobus* v. *State,* (1970) 253 Ind. 420, 254 N.E.2d 873; *Bernard* v. *State,* (1967) 248 Ind. 688, 230 N.E. 2d 536.

Ind. Code § 35-1-31-8 (Burns 1975) has been superceded by the Rules of Trial Procedure and recent decisions of this Court. Ind. R. Tr. P. 30 and 31 provide for the taking of depositions in civil cases, and these rules apply to criminal cases through Ind. R. Crim. P. 21. In *Carroll* v. *State,* (1975) 263 Ind. 696, 338 N.E.2d 264, we applied Ind. R. Tr. P. 32 relating to the use of depositions to a criminal case. The "balancing"

doctrine of *State ex rel. Keller* v. *Criminal Court of Marion County*, (1974) 262 Ind. 420, 317 N.E.2d 433, displaces the remainder of the statute. Thus, the trial rules, in conjunction with *Carroll* and *Keller,* are the basic law governing the taking of depositions in criminal cases.

In this case, there was no showing that the defendant's purpose was not bona fide or that there was any paramount interest of the State in non-disclosure. There was no showing of undue burden or expense and no move for any protective order. The petition appears to have been timely filed, under the circumstances of the case, and the record discloses no findings by the trial judge to warrant a denial.

The depositions could have been taken without having first obtained a court order, by written notice to the prosecutor. However, inasmuch as the defendant here was an indigent and the cost of such action would ultimately have had to have been paid from public funds, subject to the approval of the court, it was altogether appropriate for counsel to seek prior approval.

On appeal, the State contends that there was no legitimate reason for the defendant's motion and further that any error in the judge's ruling was harmless. The State does not show any basis for its claim, and although we recognize the distinct possibility that the requested discovery would have been unwarranted, there was nothing before the trial court to support that conclusion. The decision, therefore, was speculative and arbitrary. In essence, the State argues that because sufficient evidence to convict the defendant may be found in the testimony of witnesses whom the defendant did not seek to depose and that because there was eyewitness testimony, the defendant did not need depositions and was not harmed by the denial of his petition.

The harmless error doctrine is inapposite to this issue. As was said in *Antrobus* v. *State, supra,* relative to the right of a defendant to retrieve his own statement, previously given to the police:

"Neither does our rule require a defendant to show prior to his even seeing the statement that it would prove the innocence of the defendant. We do not see how a defendant could ever satisfy that requirement but in any case it is irrelevant because the issue here is under what conditions may a defendant inspect the statement to determine its possible use in cross examining and impeaching the credibility of the witness. Obviously it may have such a use without directly proving the innocence of the defendant." 253 Ind. at 430.

It is of no significance that there was eyewitness testimony. *Amaro* v. *State, supra.* Nor does it matter that the defendant's task of rebutting the State's evidence seems insurmountable. *Frazier* v. *State,* (1975) 263 Ind. 614, 335 N.E.2d 623. We simply cannot say that the inability to depose the seven witnesses was harmless. The fact that there may have been other evidence sufficient to sustain the conviction in no way meets this problem. We cannot presume, as a matter of law, that no exculpatory or mitigating evidence would have surfaced from the depositions sought. Even if it were determined retrospectively that nothing in aid of his defense was discoverable, we could not discount the effect of a denial. Effective counseling is dependent upon knowledge of the facts, and it is essential that weaknesses as well as strengths be discovered and intelligently assessed.

## ISSUE II

The defendant had entered pleas of not guilty and not guilty by reason of insanity. The insanity plea was based upon his claim that he was a heroin addict suffering withdrawal reaction. The withdrawal pains were said to render him unable to conform his behavior to the requirements of the law. The evidence of his addiction was uncontroverted, as was the fact that he had sought help for six days prior to the robbery from the community addiction services agency. The evidence is somewhat less clear regarding his claim of withdrawal reaction.

The following instruction was given over the defendant's

objection that it was an incorrect statement of the law and that it was not applicable to the evidence in the case.

"It is not a defense that an accused (sic) is under the influence of drugs at the time of an offense. A person who through the voluntary use of drugs not taken as medicine has the same responsibility as that of a person voluntarily intoxicated by drugs or liquior (sic). That is voluntary intoxication by drugs or liquior (sic) of the accused (sic) does not mitigate the offense."

The State cited two cases in support of this instruction: *Davis* v. *State,* (1968) 249 Ind. 373, 232 N.E.2d 867; and *Sharp* v. *State,* (1903) 161 Ind. 288, 68 N.E. 286. Neither of these cases states the rule in the absolute terms offered here.

In *Snipes* v. *State,* (1974) 261 Ind. 581, 307 N.E.2d 470, this Court was faced with a petition for transfer in which the trial court and the Court of Appeals approved an instruction similar to the one given in this case. We granted transfer and reversed, noting that the correct rule is as follows:

"Normally voluntary intoxication is not a defense in a criminal proceeding. In order for intoxication to relieve appellant from responsibility the crime charged must have involved specific intent and he must have been so intoxicated as to be incapable of entertaining the required specific intent."

*Snipes, supra,* 261 Ind. at 583, citing *Emler* v. *State,* (1972) 259 Ind. 241, 286 N.E.2d 408. *See also Stout* v. *State,* (1974) 262 Ind. 538, 319 N.E.2d 123; *Preston* v. *State,* (1972) 259 Ind. 353, 287 N.E.2d 347.

Moreover, this instruction, by analogizing the "influence" of drugs to intoxication, is inapplicable to the facts of the case. The defendant did not argue that addiction to heroin incapacitated him to such an extent that he could not form a specific intent to commit the crime charged. This ability is assumed to be present. The argument was at all times that the withdrawal reaction affected the defendant in such a way that he could not curb his intent or impulse to commit the crime in order to obtain funds to support his addiction. The

defense was at all times insanity, not the more limited one of incapacity to form a specific intent. Thus, even if the instruction had correctly stated the proposition which it apparently attempted to state, it would not have been applicable to the insanity defense. As in *Snipes*, we are presented with an erroneous instruction to which timely and specific objections were made. It is true that the giving of an erroneous instruction does not always require reversal. *Wilson* v. *State*, (1975) 263 Ind. 469, 333 N.E.2d 755; *Witherspoon* v. *State*, (1972) 258 Ind. 149, 279 N.E.2d 543. However, in this case, there is an incorrect, irrelevant and confusing instruction, the force of which is undiluted by any other instructions; and given the nature of the defense, we believe it was likely to have misled the jury.

## ISSUE III

Following the defendant's filing of a suggestion of insanity, the court appointed two psychiatrists to examine him pursuant to Ind. Code § 35-5-2-2 (Burns 1975). A few days thereafter, the defendant filed a petition seeking the court's permission to have a psychiatrist of the defendant's choice examine the defendant. The State objected, and the petition was denied.

Although the court may appoint additional psychiatrists to examine a defendant, there is no obligation on its part to do so in general. "Giving the words of the Insanity Statute their plain and ordinary meaning, there is no inference that the court *must* appoint at the State's expense additional psychiatrists of the defendant's choosing." *Bimbow* v. *State*, (1974) 161 Ind. App. 338, 315 N.E.2d 738, 744.

## ISSUE IV

By these assignments, the defendant contends that the court erred in denying his pre-trial and post-trial petitions for treatment as a drug abuser under Ind. Code § 16-13-6.1-16

(Burns Supp. 1975). However, that section specifically excludes from eligibility persons charged with or convicted of committing a crime of violence. Robbery is expressly included in the list of such offenses, and there can be no dispute that armed robbery is included by inference.

The defendant's contention is that the exclusion of persons charged with crimes of violence from this section denies such persons, and specifically the defendant, the equal protection of the law. However, we have frequently held that neither the equal protection clause of the Fourteenth Amendment to the United States Constitution nor Article I, § 23 of the Indiana Constitution deprives the State of the power to make reasonable classifications. These provisions require only that such classifications be rational. *Rector* v. *State,* (1976) 264 Ind. 78, 339 N.E.2d 551; *Martin* v. *State,* (1974) 262 Ind. 232, 317 N.E.2d 430; *State ex rel. Miller* v. *McDonald,* (1973) 260 Ind. 565, 297 N.E.2d 826. The exclusion of persons who have committed violent crimes is reasonably related to the protection of the public. Therefore, the defendant has not been denied constitutionally required equal protection.

## ISSUE V

Following the defendant's pleas of not guilty and not guilty by reason of insanity, he moved for a bifurcated trial separating the issues of criminal activity and the issue of sanity. This motion was denied. In support of this assigned error, the defendant presents a theoretical justification for bifurcated trials in general, apparently assuming that such trials are not permitted under present Indiana practice. Clearly, however, such trials are permitted. Ind. R. Tr. P. 42(B). We have previously discussed this matter, pointing out both the advantages and disadvantages of having a separate trial upon the issue of sanity. In *Hester* v. *State,* (1974) 262 Ind. 284, 315 N.E.2d 351, a case ignored by both the defendant and the State, we stated that a bifurcated trial should be granted upon a showing of "compelling

circumstances." No such showing was made by the defendant either at the trial or on appeal, and it can not be said that the trial judge committed clear error in overruling such motion.

### ISSUE VI

Prior to trial, the defendant moved to discover any admissions or confessions made by the defendant. The State responded that no confessions had been made and that "admissions are contained only in conversations had at the time of apprehension by defendant Edward Leon James to members of the Muncie Metropolitan Police Department." Nonetheless, the court ordered the State to provide the defendant with "Xerox copies of summary reports given by defendants." No summaries of statements made by the defendant were provided under this order.

At the trial, Officer Williams testified for the State that after the defendant's arrest, the defendant stated to Williams, "Well, I had the rifle." Defendant did not contend at the trial that the prosecutor had deliberately suppressed evidence. *See Moore* v. *Illinois*, (1972) 408 U.S. 786, 92 S. Ct. 2562, 33 L.Ed.2d 706; *Evans* v. *Janing*, (8th Cir. 1973) 489 F.2d 470. Nor did the defendant move for a continuance. On appeal, he does not contend that any sanction was due or that a mistrial should have been granted. His sole argument is that the court had erred in overruling his motion for discovery.

As we read the order, the motion for discovery had not been overruled but had been granted. If the State failed to comply with the order and the defendant deemed such failure prejudicial to his defense, it was incumbent upon him to request appropriate action. Here, we see nothing but a failure to comply with a discovery order and a waiver of non-compliance.

## ISSUE VII

Defendant has challenged the sufficiency of the evidence of his sanity under three assignments, that is that the court erred in overruling his motion for judgment at the conclusion of the State's case, that the verdict is not supported by sufficient evidence and that the judgment was contrary to law. The issues are the same under the two last mentioned assignments and will be treated as one. As to the motion for judgment on the evidence, the ruling thereon is not subject to review, as the defendant did not stand upon it but introduced evidence in his defense. *Pinkston* v. *State*, (1975) Ind. App., 325 N.E.2d 497; *Hancock* v. *State*, (1971) 256 Ind. 697, 271 N.E.2d 731; *Warren* v. *State*, (1963) 243 Ind. 508, 188 N.E.2d 108.

The substance of the defendant's insanity plea was that he was a drug addict suffering from withdrawal reaction to the extent that he could not conform his conduct to the requirements of the law thus meeting the requirements of *Hill* v. *State*, (1969) 252 Ind. 601, 251 N.E.2d 429, wherein we adopted the following test:

> "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

It is doubtful that drug addiction is a mental "disease" or "defect" under the foregoing test; and it is highly questionable that the law could tolerate a policy of accepting such addiction as an excuse for criminal activity. It appears that we are not dealing with an incapacity born of mental disease or defect but rather with an inability to withstand temptation born of a great physical need. It is unnecessary, however, to pass upon that question in this case, as our review of the record reveals a conflict in the evidence upon the issue of the defendant's capacity to conform his conduct to the requirements of the law. It is true, as claimed by the defendant, that the psychiatric testimony

given at trial indicated that he could not conform his conduct to the requirements of the law and that he was a heroin addict.

Since the defendant's claim of insanity was predicated upon a claim that his disability was the result of his being in "withdrawal," it follows logically that if he was in fact not in that deplorable state at that time of the robbery, his defense was without foundation. The psychiatric testimony also revealed the various physical manifestations of drug withdrawal —stomach cramps, crying, sweating and diarrhea. The testimony of police officer, Winkle, refutes the defendant's claim. The officer was among those who apprehended the defendant while the robbery was in progress, and he was present during the booking procedures at the police station that followed fifteen or twenty minutes later. In all, he observed the detendant for approximately one and one-half hours during this critical period and had known the defendant and observed him from time to time over a period of seven years. This officer testified that the defendant's appearance and conduct during the arrest and booking was essentially the same as it had been on all other occasions of their meeting, that his speech and mannerisms were normal, that he was not crying or sweating or cramping and did not have diarrhea.

The testimony of Officer Winkle was substantial and probative evidence that the defendant was not encountering drug withdrawal reactions at the time of the robbery, and within the context of the defense offered, it was substantial and probative evidence of the defendant's sanity.

We have frequently held that the question of insanity is a factual one to be determined by the trier of fact. As in other factual determinations, we do not, on appeal, weigh the evidence or judge the credibility of the witnesses but look to the evidence most favorable to the appellee and to the reasonable inferences to be drawn therefrom; and we affirm if there is substantial evidence of probative value to support the judgment. *Sotelo* v. *State,* (1976) 264 Ind. 298, 342 N.E.2d 844; *Dragon* v. *State,* (1974) 262 Ind. 394, 316 N.E.2d 827; *Moore* v. *State,* (1973) 260 Ind. 154, 293 N.E.2d 28.

The weight to be accorded expert testimony, as well as lay testimony, is the exclusive province of the trier of fact which is at liberty to discount it or to reject it in the face of lay testimony which it finds more persuasive. *Moore* v. *State, supra; Sotelo* v. *State, supra; Riggs* v. *State,* (1976) 264 Ind. 263, 342 N.E.2d 838.

## ISSUE VIII

Under the authority of *Furman* v. *Georgia,* (1972) 408 U.S. 238, 92 S. Ct. 2726, 33. L.Ed.2d 346, the defendant attacks the sentencing provision of the statute under which he was convicted. It is his position that the authority vested in the judge or jury to fix the sentence between ten and thirty years is a denial of constitutional equal protection and due process requirements. That case does, to some extent, restrict the degree of discretion permitted in assessing sentences, but we are aware of no case suggesting that the effect of the *Furman* opinion is to prohibit virtually all discretion, as is urged by the defendant, and we do not share that point of view. The *Furman* decision was announced in a *per curiam* opinion and was limited to a holding that "The imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." The five concurring opinions separately expressed viewpoints tending to support the defendant's position, but yet we believe they would not preclude all discretion. In any event, we do not regard the separate expressions of the several justices as the law of the case. While they undoubtedly would be helpful, we do not consider them binding, and this is particularly true in a consideration of non-capital offenses.

For the reasons set forth under Issues I and II above, the judgment of the trial court is reversed and the cause remanded for a new trial.

Givan, C.J. and Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 352 N.E.2d 479.