**Louis Ralph JOHNSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 3–278A32.

Court of Appeals of Indiana,
Third District.

Jan. 15, 1979.

Dawn Wellman, Cohen & Thiros, Merrillville, for appellant.

Theo. L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Louis Ralph Johnson guilty of Assault and Battery with Intent to Kill. He was then sentenced to the Indiana Department of Corrections for a period of not less than two (2) nor more than fourteen (14) years. In his appeal to this Court, Johnson raises the following issue: [1]

> Did the trial court err by denying Johnson's motion for a continuance to prepare for the testimony of the State's surprise expert witness?

We reverse and remand for a new trial.

## I.

### Facts

The charge filed against Johnson stems from the November 27, 1976 shooting of Freddy Marie Burns, his fiancee. While

---

1. Because we reverse on this issue, we do not address the second issue raised by Johnson.

Johnson was driving Burns home from a social function which the couple had attended that evening, a "lovers' quarrel" developed between the couple. At one point in their argument, Johnson requested that Burns return the engagement ring which he had given to her. Burns complied, but shortly thereafter the couple reconciled their differences and Burns took the ring back.

They had used Burns' automobile that evening, and she agreed that Johnson could take her car home so that he could use it to run various errands the next day. For her personal safety, Burns wanted to take the handgun which she kept in the glove compartment. Johnson had removed the handgun, however, and left it at his mother's house. He suggested that she could get the gun some other time, but at Burns' insistence, they proceeded to his mother's house to pick up the gun.

At his mother's home, Johnson retrieved the gun and returned to the car, where he cradled the gun on his lap. The couple then revived their discussion about their relationship. Johnson expressed concern over Burns' lack of diligence in finalizing her pending divorce. Burns was about to explain the reason for the delay when the handgun discharged, wounding her in the head. Johnson rushed her to the hospital, where he explained to police that the shooting was accidental. Burns later told police that Johnson had intentionally shot her.

Shortly after the State filed charges against Johnson, the trial court, *sua sponte*, entered its discovery order which required the State to list all persons which it intended to call as witnesses at trial. According to the order, all discovery was to be completed by March 30, 1977.

Despite the trial court's order, the State on Thursday, August 18, 1977, added the name of Sergeant Kenneth Roberts, a firearms expert, to the list of witnesses who were to testify at trial. The following Monday, August 21, the trial began.

Johnson immediately made alternative motions to prohibit Roberts from testifying or for a continuance to prepare to meet the testimony of Roberts. Johnson also suggested as a "third alternative" that he at least have the opportunity to depose Roberts before he testified. When the State suggested that Roberts' deposition could be taken that evening, counsel for Johnson pointed out that the immediacy of the trial would prevent follow up discovery on the deposition evidence. Johnson's counsel also noted that the State's solution would not allow adequate time to analyze the deposition for possible impeachment purposes, and further indicated that her schedule was already crowded with trial-related matters.

The trial court denied Johnson's motions for a continuance and to prohibit the testimony of Kenneth Roberts. Instead, the court delayed the testimony of Roberts from August 23, to August 24 for the purpose of allowing Johnson to depose Roberts. During the evening of August 23, counsel for Johnson did depose Roberts.

Prior to Roberts' testimony on August 24, Johnson reasserted his motion for a continuance. Johnson argued that the late notice given to him by the State prevented him from obtaining an expert witness to rebut Roberts' testimony. The trial court took the motion under advisement until "we hear what the testimony of the witness [Roberts] is." [2]

Roberts' testimony focused on the physical acts necessary to discharge the handgun. According to Roberts, a "single action" firing of the handgun required both that the handgun be cocked and that four pounds of pressure be exerted on the trigger. Roberts testified that a "double action" firing of the weapon required only that twelve pounds of pressure be applied to the trigger. Roberts' testimony emphasized that the handgun did not have a sensitive trigger, and it was Roberts' conclusion that the gun would not fire unless the trigger was pulled.

---

2. The record does not reveal whether the trial court ever ruled on the motion taken under advisement. The motion was reasserted in Johnson's Motion to Correct Errors, however, which the trial court denied.

The only other testimony regarding whether the gun was accidentally or intentionally discharged came from Burns and Johnson. Burns testified that "Louis raised the gun and said I was lying and shot." According to Johnson, the gun began slipping in his lap. When he grabbed for it, the gun became entangled in his coat and he began to lose his grip on the handle. He then grasped the gun more firmly and jerked it free from his coat, threw his hand up in the air, and the gun discharged. Johnson testified that he was not aware that his finger was ever on the trigger, and he did not remember cocking the handgun prior to its discharge. On cross exam, Johnson testified: "From the statement of Mr. Roberts, I'm sure it was cocked." No testimony was offered to indicate whether the bullet which injured Burns came from a single or double action firing of the handgun.

## II.

### Motions for a Continuance

Johnson contends that the trial court committed reversible error by its failure to grant his motions for a continuance. He asserts that the mid-trial opportunity to depose firearms expert Roberts which the trial court afforded him did not allow him adequate time to prepare to question the expert or to use the deposition intelligently at trial. Additionally, Johnson maintains that the denial of a continuance precluded him from obtaining an expert witness to rebut the testimony of Roberts. It is Johnson's contention that he was prejudiced by the damaging nature of Roberts' testimony.

The State maintains that the trial court did not abuse its discretion when it denied Johnson's motion for a continuance. Alternatively, the State argues that Johnson's request for a continuance was in effect satisfied by the trial court's one day delay of Roberts' testimony. The State also suggests that the presence of the gun in the prosecutor's office during the six months preceding the trial afforded Johnson ample

opportunity to prepare for testimony regarding the weapon, expert or otherwise. Finally, the State contends that no prejudice inured to defendant because the "primary evidence" against Johnson was the testimony of Burns and not that of Roberts.

█ "The object of a trial is the discovery of the truth." *State ex rel. Keller v. Criminal Ct. of Marion Cty.* (1974), 262 Ind. 420, 423, 317 N.E.2d 433, 435. To facilitate the ascertainment of the truth, the trial court, with its inherent power to guide and control the proceedings, has the power to order, *sua sponte*, pre-trial discovery between the parties to a criminal proceeding. *Id.; Johns v. State* (1968), 251 Ind. 172, 179, 240 N.E.2d 60, 64; *Bernard v. State* (1967), 248 Ind. 688, 691, 230 N.E.2d 536, 539.

Here, the trial court, *sua sponte*, entered a reciprocal discovery order which included among its directives an order that the State list the names of all those persons it intended to call as witnesses at trial. Over four months after discovery was supposed to have been completed and only one workday prior to trial, the State amended its list of witnesses to include the name of firearms expert Kenneth Roberts.

█ Usually, when a defendant is confronted with a "surprise witness," the proper response is to move for a continuance. *Siblisk v. State* (1975), 263 Ind. 651, 656, 336 N.E.2d 650, 653. A continuance is not the sole remedy available. Other remedies may be invoked where circumstances dictate a more appropriate solution. *Butler v. State* (1978)[3], Ind.App., 372 N.E.2d 190, 193; *State v. Buza* (1975), Ind.App., 324 N.E.2d 824, 825.

█ At the outset of trial, Johnson tendered three alternate remedies to the trial court. He first requested that Roberts not be permitted to testify. This remedy is usually invoked only when it is shown that the State has blatantly and deliberately refused to comply with the court's discovery order. *Gregory v. State* (1972), 259 Ind.

---

**3.** We note that *Butler v. State, supra,* was decided in the interim between the conclusion of

Johnson's trial and the consideration of this appeal.

295, 300, 286 N.E.2d 666, 670. *But see State v. Buza, supra* at 826. Here, the record reveals that the State's non-disclosure was the inadvertent consequence of a change in case assignments among the prosecutorial staff. Accordingly, it was within the trial court's discretion to deny Johnson this remedy.

Johnson also sought either a continuance or to "at least have the opportunity to depose that witness [Roberts] before Court." We note that since the State did not show that Johnson had no legitimate defense interest in deposing Roberts or that the State had a paramount interest to protect, Johnson had a right under our rules of procedure to take the deposition of Roberts for discovery purposes. *Murphy v. State* (1976), 265 Ind. 116, 352 N.E.2d 479, 481–82. Under Indiana's reciprocal discovery system, full discovery is also extended to the State. *State ex rel. Keller v. Criminal Ct. of Marion Cty., supra.* Pre-trial discovery merely regulates the timing of disclosures, and provides both sides in a criminal proceeding with the time and information to adequately prepare its case. *Id.* 317 N.E.2d at 437.

According to the reciprocal discovery order which the trial court entered, Johnson was required to disclose any defenses which he intended to offer at trial. The discovery order insured that by March 30, 1977, the State would be informed that Johnson intended to assert at trial the defense that he did not intentionally shoot Burns. The State could then prepare and develop the theory of its case, and procure expert witnesses in support of its position.

Through its own inadvertence, however, the State then failed in its reciprocal discovery duty to notify the defendant that it intended to introduce expert testimony to counter Johnson's defense. That duty was one which the *trial court* had imposed upon the State. In that respect, this case is similar to *Butler v. State* (1978), Ind.App., 372 N.E.2d 190, where Judge Lybrook observed:

"Although the State in this case did not perhaps deliberately avoid compliance, the defendant *did* request a continuance. . . . Had defendant filed for discovery and failed to pursue his rights diligently, he would be placed in a completely different position. However, the trial court took it upon itself to order such discovery; therefore the trial court should see that the order is enforced. This does not mean that a court must police its records, but rather, that a sufficient remedy be provided when there is a failure to comply."

*Id.* at 194. Here, the trial court rejected Johnson's motion for a continuance and instead delayed the testimony of surprise expert witness Roberts for one day in order to provide Johnson with an opportunity to depose Roberts before he testified.

In tendering this latter remedy to the court, counsel for Johnson indicated that the immediacy of Roberts' testimony and her already crowded trial schedule would prevent her from making effective use of the deposition, even for impeachment purposes. These same circumstances precluded both preparation for the deposition and follow-up research on the technical subject matter involved. Indeed, the record reveals that Johnson's cross-examination of Roberts was void of questioning on the subject of the propensity of the handgun to discharge accidentally. The *mid-trial* deposition of the State's surprise *expert* witness which was granted Johnson did little to aid the defendant in the preparation of his case.

We find that the remedy provided by the trial court under these circumstances was inadequate. A continuance was the proper remedy, for the opportunity to depose a surprise expert witness in mid-trial was comparable in effect to a pre-trial denial of a motion to depose an opposing party's expert witness. In both instances, the purpose of discovery—to provide both parties with the maximum possible amount of information with which to prepare their case in *advance of trial*—is denied.

Because we consider the mid-trial deposition to have been of no discovery value to Johnson, we reverse the trial court on that

same basis enunciated in *Brewer v. State* (1977), Ind.App., 362 N.E.2d 1175. There, the State had violated a court order to produce its witnesses for pre-trial depositions scheduled by the defendant. At trial, the defendant's motion for a continuance so that he might depose the witnesses was denied. The Court of Appeals reversed, noting that the trial court's failure to grant the defendant's motion for a continuance effectively denied the defendant's "right to take depositions of witnesses prior to trial." *Id.* at 1177.

We do not agree with the State's contention that the one day delay in effect satisfied Johnson's request for a continuance. A continuance would have terminated the trial proceedings and at least provided counsel for Johnson with one workday to prepare to depose the expert Roberts on the technical subject matter of firearms. As it was, Johnson's counsel was occupied with trial during the day, deposed Roberts that evening, and was expected to cross-examine Roberts the following day.

■ The State also contends that Johnson was not harmed by the denial of a continuance because the "primary" evidence against Johnson was the testimony of Burns. When a defendant is erroneously denied his right to take discovery depositions prior to trial, the harmless error doctrine is not applicable. *Murphy v. State* (1976), 265 Ind. 116, 352 N.E.2d 479, 482; *Brewer v. State, supra* at 1177. It does not matter that there was eyewitness testimony nor that other independent evidence in the record could support the conviction of the defendant. *Amaro v. State* (1968), 251 Ind. 88, 239 N.E.2d 394. Nor would it matter that Johnson would probably have been unable to rebut the evidence offered by Roberts. *Frazier v. State* (1975), 263 Ind. 614, 335 N.E.2d 623.

■ We also predicate our reversal on the fact that the denial of Johnson's motion for a continuance precluded him from obtaining an expert witness to rebut the testimony of Roberts. It is well settled that a motion for a continuance based on non-statutory grounds is in the trial court's discre-

tion. Ind. Rules of Trial Procedure, Trial Rule 53.4; *White v. State* (1975), 263 Ind. 302, 305, 330 N.E.2d 84, 86; *Butler v. State* (1978), Ind.App., 372 N.E.2d 190, 194. An abuse of discretion is demonstrated if the record reveals that the defendant was prejudiced by the failure of the trial court to grant the continuance. *King v. State* (1973), 260 Ind. 422, 426, 296 N.E.2d 113, 115. Thus, the trial court's ruling will be reversed only when it is shown that the defendant is harmed. *Napier v. State* (1971), 255 Ind. 638, 647, 266 N.E.2d 199, 203.

Here, the testimony of the State's expert concerned the only factual question in dispute at trial: whether the handgun discharged accidentally or intentionally? Firearms expert Roberts' testimony, based on tests he conducted on the weapon, established that the handgun would not discharge unless a significant amount of pressure was applied directly to the trigger, thus undermining Johnson's testimony that the gun discharged as a result of its entanglement in his coat. Johnson, without time to procure an expert and conduct a similar examination of the gun, could not offer any expert evidence to rebut Roberts' testimony. An evening to depose the State's surprise expert witness was grossly inadequate for Johnson's defense counsel to review and analyze the expert's testimony and to obtain on short notice an expert witness of his own for rebuttal. This lack of opportunity to prepare for a surprise expert witness created a prejudice that could not be overcome by Johnson.

■ Once the trial court has led the defendant to believe that he has been afforded discovery rights, it is incongruous to allow the State to inject surprise expert testimony at trial without allowing the defendant an opportunity to investigate and prepare for technical evidence which concerns his defense. *Butler v. State, supra* at 195.

■ Equally incongruous is the State's contention that since the handgun was present in the prosecutor's office during the

six months preceding trial, the defense had ample opportunity to prepare for testimony regarding the weapon, expert or otherwise. Defense counsel did not believe expert testimony was necessary, a belief no doubt reinforced by the State's indication until one workday prior to trial that it would not call any expert witnesses. It is both ironic and wholly inconsistent with the purposes of discovery that the State suggests, after disclosing the existence of an expert witness one day prior to trial, that Johnson should have anticipated the possibility that technical aspects of firearms would be covered by expert testimony at trial.

When discovery orders are complied with, "justice and expediency are the victors." *Butler v. State, supra* at 195. When non-compliance with such orders occurs, however, trial courts must provide to the surprised party a remedy sufficient to guarantee that the purpose of discovery is fulfilled, lest the idea of a criminal trial as a sport or game be revived. The remedy provided here denied Johnson adequate time to prepare his case and deprived him of a fair trial.

Reversed and remanded for new trial.

CHIPMAN, P. J., concurs.

GARRARD, P. J., concurs in result.