Walter Lee LIDDELL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–1006–CR–339.

Court of Appeals of Indiana.

May 11, 2011.

Thomas W. Vanes, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Walter Lee Liddell appeals his convictions for rape, criminal confinement, and related offenses. Liddell was accused of sexually assaulting two girls. His defense at trial was mistaken identity. On the fourth day of trial, the State called a late-discovered eyewitness. Liddell moved to exclude the witness or allow a continuance to prepare accordingly. The trial court denied both requests but ensured Liddell an opportunity to depose the witness before he appeared. The new witness testified that Liddell was with the victims on the night in question and drove away with them right before the alleged assault. Liddell was convicted as charged. He appeals, arguing that the trial court erred by letting the witness testify and providing no continuance before his testimony. We conclude that the trial court acted within its discretion. First, we find an insufficient showing of misconduct by the State to mandate exclusion of the witness. Second, Liddell was able to depose the witness the day before he testified and cross-examine him at length in court. Finally, Liddell identifies no specific, responsive measures that he was prevented from taking and that he would have pursued had the trial court granted a more substantial continuance. We affirm.

### Facts and Procedural History

In August 2005, sixteen-year-old L.O. and seventeen-year-old K.R. met a man who identified himself as "Demetrious" at a Lake Station gas station. L.O. and K.R. chose to accompany Demetrious to a residence in Gary and smoke marijuana with him. Demetrious drove them to the house in a light blue Mercury Cougar.

The three were joined at the residence by another man named Jerry. Jerry had a tattoo reading "Angela" on his neck. The group spent about one hour watching television, talking, and smoking marijuana together.

Afterward, Demetrious left with L.O. and K.R., drove them to a wooded area, and began a prolonged sexual assault of the girls using confinement and threats of violence. The episode included forced oral sex, vaginal rape, and additional physical abuse. Demetrious drove away leaving the victims on the ground, bound in duct tape. He also took several of their belongings. L.O. and K.R. helped each other up, ran to a nearby apartment complex, and sought assistance from resident Vernell Driver. Driver called the police. Officer Craig McLean responded and took initial statements from the girls. L.O. and K.R. then went to the hospital and were examined by Dr. Richard Wolfe. Dr. Wolfe found no physical evidence of sexual assault but concluded, based on the girls' reports, that L.O. had been raped and K.R. molested.

Police recovered a blue Mercury Cougar registered to Liddell, and L.O. and K.R. later identified Liddell as the "Demetrious" who assaulted them. Liddell apparently had used the name before.

The State charged Liddell with rape, battery, criminal deviate conduct, criminal confinement, intimidation, sexual battery, and theft.

Liddell's defense theory was mistaken identity. Liddell did not deny that something may have happened to the victims, but he claimed that he was misidentified and that the actual perpetrator was a Dwuane Walker to whom he had loaned

his car. Liddell also posited that "Jerry" was Walker's associate, Jerry Host. Police initially were unable to locate the Jerry in question.

Liddell's first two trials took place in 2007 and 2008, and both ended in hung juries. His case proceeded to trial for a third time in April 2010.

A few days before trial, the prosecuting attorney visited a Gary police station in connection with another case. While there, the prosecutor asked an officer to search the Spillman law enforcement database for any subject with an "Angela" neck tattoo. The search produced a photograph of Jerry Alexander Parrish along with Parrish's residential information. The photo was taken in April 2009 when Parrish was arrested for an unrelated offense. The prosecuting attorney later showed Parrish's photo to L.O., who identified Parrish as the "Jerry" present at the residence.

On the morning of the first day of trial, the State brought Parrish's photo to the attention of the trial court. The State indicated that it did not intend to call Parrish as a witness, but it did plan to introduce Parrish's photo to confirm his identity with the victims and refute the defense's theory that "Jerry" was Jerry Host.

The defense moved for a continuance to find and question Parrish. Counsel argued that Parrish might have helpful or exculpatory information. The trial court denied the motion, noting that Liddell's case was almost five years old and that it was unlikely Parrish would be reachable or have any pertinent knowledge. But the court did call a recess so that the defense could collect itself and talk to the victims again before they testified. During recess, defense counsel spoke with L.O. in regard to the Parrish photo. He also visited Parrish's address in hopes of finding him,

though Parrish was not home. The defense renewed its motion for a continuance the following day, believing that Parrish could soon be located. Again the motion was denied. The court reiterated that chances were slim Parrish could be found or would know anything useful. Nonetheless, the defense added Parrish to its own list of potential witnesses.

Defense counsel stated in opening, "This is a case of mistaken identity.... Something clearly happened to these young ladies. I'm not sure if they were raped or robbed, but clearly something happened to these young ladies for sure.... These girls picked him out of a lineup—picked Walter out of a lineup.... [T]his is a case of mistaken identity. My client told this detective from minute one, when she talked to him, 'I didn't have the car. [Dwuane] had my car.'" Tr. p. 140, 141, 145.

The State called L.O., K.R., Driver, Officer McLean, Dr. Wolfe, and several other investigating officers to testify to the foregoing events.

On the third day of trial, police located Jerry Parrish. Parrish indicated that he was at the residence on the night in question and recalled Liddell coming over and smoking marijuana with the girls.

The next day, the State announced it would call Parrish to testify, and the defense now moved to exclude Parrish as a witness or at least to provide a continuance so it could investigate and prepare further. The trial court denied both requests. The court noted that the defense had added Parrish to its own witness list, so it served the interests of both the State and defense to allow Parrish to testify. However, the court acknowledged that the defense was entitled to speak to Parrish before he appeared. The court stated that the defense could talk to Parrish during

lunch hour that day. Defense counsel responded, "I want to take his dep, your Honor. I want to put him under oath.... Can we do it ... after the close of business today? Because, ... if I have to order the dep, then what are we gonna do then?" *Id.* at 757. The trial court understood and replied, "Sure. I think the end of business is perhaps ... the best time to do it. He won't testify today. He'll have to testify tomorrow Make him available the end of business. It has to be that way. He will testify, though." *Id.* at 758–59.

Parrish appeared on day five as the State's final witness. The defense did not renew any objections before Parrish took the stand. Parrish testified in relevant part that he had an "Angela" neck tattoo and had it since 2003; he had known Liddell since elementary school and also knew Liddell's family; and Liddell arrived at the residence with L.O. and K.R. on the evening in question, spent about an hour with them at the house, and departed with them in Liddell's car. The defense cross-examined Parrish at length, challenging his recollection, discussing his drug use, noting his connection with neighborhood ne'er-do-wells, and eliciting his association with the underage victims on the night of their assault.

The defense altered its strategy in closing argument, tabling the mistaken-identity theme and instead claiming that L.O. and K.R. fabricated their allegations of assault and rape. Counsel argued in part, "These girls clearly didn't want anybody to know that they were leaving the house at 16 and 17 years old with an African American.... The young ladies were in a predicament and manufactured a story.... I don't believe that they were sexually assaulted. I don't know if they were robbed and somebody left them out at the lake or they—they lost their clothing somehow. I don't know. And you don't know, either, because you can't believe the words that they tell you." *Id.* at 1174, 1183, 1197.

Liddell was found guilty as charged. He now appeals.[1]

## Discussion and Decision

Liddell claims the trial court erred by denying his requests to exclude Parrish or, in the alternative, to continue the trial so he could prepare for Parrish's testimony. Liddell stresses that, although the State disclosed Parrish's photo upon obtaining it, the State could have ascertained Parrish's identity from the Spillman system at least a year earlier and located Parrish before trial; the State assured Liddell at the beginning of trial that it did not intend to call Parrish as a witness; and Parrish's surprise testimony prejudiced him by unfairly compromising the defense's mistaken-identity theory.

■■ The trial court is granted wide discretion in deciding whether to allow testimony from a witness not listed on a pretrial discovery witness list. *F.E.H., Jr. v. State*, 715 N.E.2d 1272, 1274 (Ind.Ct. App.1999). Exclusion of a late-discovered witness's testimony is necessary only if the State has blatantly and deliberately failed to comply with discovery. *See Taylor v. State*, 676 N.E.2d 1044, 1046 (Ind.1997), *reh'g denied; Wilson v. State*, 533 N.E.2d 114, 117 (Ind.1989); *Murray v. State*, 479 N.E.2d 1283, 1287 (Ind.1985), *reh'g denied.* "[O]rdinarily an adjournment or continuance of the trial for a deposition is sufficient to place the party in as good a position as he would have been in" had the surprise witness been named earlier. *Lay v. State*, 428 N.E.2d 779, 781 (Ind.1981).

1. We heard oral argument in this case on March 28, 2011, at Valparaiso University School of Law. We thank the students, faculty, and staff of Valparaiso for their hospitality and involvement.

■ The first question is whether the State's late introduction of Parrish was flagrant and thus required wholesale exclusion of Parrish's testimony.

Parrish's photograph and personal information were available in the Spillman system at least by April 2009, so conceivably the State might have identified and located Parrish earlier than it did. The State also represented to the defense at the start of trial that it did not intend to call Parrish as a witness and would only introduce his photograph to show to the victims. That assurance proved untrue when the State named Parrish as an official witness on day four.

It is difficult to conclude on this record, however, that the State's delay in finding Parrish and its initial assurance not to call him were in bad faith or intentionally misleading. Police were unable to locate Parrish during earlier investigations. The State ran a last-minute search for him and found his picture in the Spillman database. The State disclosed Parrish's picture to. the defense after finding it. At the beginning of trial, the State believed that the picture was all it would have at its disposal. No one knew that Parrish would be accessible or have any knowledge of the events at issue. Authorities then found Parrish midtrial, Parrish revealed himself to be a material eyewitness, and the State responded to an unpredictable, evolving situation by calling him to testify.

In light of the foregoing considerations, we cannot say that the State's late introduction of Parrish was a "blatant" and "deliberate" discovery manipulation. We therefore conclude that the trial court acted within its discretion by allowing Parrish to appear. *See also Wilson,* 533 N.E.2d at 117 ("There is no indication in this record that the State attempted to evade the court's discovery order or that there was any attempt to trick or mislead appellant.

Under such circumstances, the trial court was well within its discretion to permit the witnesses to testify."); *Murray,* 479 N.E.2d at 1287 ("There is neither allegation nor showing that the State's actions here represented a blatant and deliberate refusal to comply with our discovery rules and it therefore was discretionary with the trial court to permit the testimony of witness Essex."); *Kennedy v. State,* 934 N.E.2d 779, 788 (Ind.Ct.App.2010) ("Here, there is no evidence the State was holding an 'ace in the hole' with respect to Felty and her testimony. . . . Her existence was disclosed to defense counsel as soon as the State learned of her. . . . [W]here there is no indication the State engaged in any misconduct and defense counsel had an opportunity to investigate Felty and her testimony, we cannot say the trial court abused its discretion in permitting her to testify."); *Davis v. State,* 714 N.E.2d 717, 722–23 (Ind.Ct.App.1999) ("Charles has not shown any deliberate conduct upon the part of the State to mislead him, or to prejudice his defense. . . . Under the particular facts and circumstances of this case, we hold that the trial court did not err in permitting Lena to testify."), *trans. denied; Cleary v. State,* 663 N.E.2d 779, 784 (Ind.Ct.App.1996) ("Cleary does not allege that the State engaged in deliberate conduct to deny him a fair trial. Moreover, the State could not have anticipated that Bennett would testify since it did not discover that Cleary had the stolen belt until the defense had rested. Accordingly, the State was excused from disclosing this witness. We hold that the trial court did not err in permitting Bennett to testify.").

The remaining issue is whether Liddell was entitled to a continuance before Parrish testified, or stated otherwise, whether he was prejudiced by the trial court's failure to grant one.

Liddell cites *Johnson v. State*, 179 Ind.App. 28, 384 N.E.2d 1035 (1979), to support his contention that a continuance was necessary. In *Johnson*, the defendant was charged with assault and battery with intent to kill for shooting his fiancée with a handgun. *Id.* at 29, 384 N.E.2d at 1036. The victim claimed that the defendant shot her on purpose. *Id.* at 31, 384 N.E.2d at 1038. The defendant maintained that his gun discharged by accident. *Id.* A few days before trial, the State added a previously-undisclosed firearms expert to its witness list. *Id.* at 30, 384 N.E.2d at 1037. The late disclosure was an inadvertent result of a change in case assignments among prosecutorial staff. *Id.* at 33, 384 N.E.2d at 1039. The defendant moved to exclude the expert or allow a continuance so he could prepare to meet his testimony. *Id.* at 30, 384 N.E.2d at 1037. The defendant further argued that a last-minute deposition would not suffice to allow follow-up research on the technical subject matter involved or analysis of the deposition transcript for impeachment purposes. *Id.* at 30–31, 384 N.E.2d at 1037. The trial court denied the defendant's motions, instead delaying the expert's scheduled appearance by one day so that the defense could depose him the evening before he testified. *Id.* at 31, 384 N.E.2d at 1037. The defendant deposed the expert accordingly but reasserted his motion before the expert took the stand. *Id.* He argued in particular that the State's late notice prevented him from obtaining his own expert witness to rebut the State's witness's testimony. *Id.* The trial court took the motion under advisement but provided no continuance. *Id.* The State's expert testified to his conclusion that the handgun trigger was pulled intentionally. *Id.* The defendant was convicted as charged, but on appeal this Court reversed. *Id.* at 29, 384 N.E.2d at 1036. We found that the remedy afforded by the trial court for the ex-

pert witness's late discovery was insufficient. *Id.* at 35, 384 N.E.2d at 1039. The trial court was warranted in allowing the expert to testify, as his late disclosure was not the result of misconduct by the State. *Id.* at 33, 384 N.E.2d at 1038–39. However, we concluded that the defendant was entitled to a legitimate continuance before the witness appeared. *Id.* at 35, 384 N.E.2d at 1039. We explained that

> Johnson, without time to procure an expert and conduct a similar examination of the gun, could not offer any expert evidence to rebut Roberts' testimony. An evening to depose the State's surprise expert witness was grossly inadequate for Johnson's defense counsel to review and analyze the expert's testimony and to obtain on short notice an expert witness of his own for rebuttal. This lack of opportunity to prepare for a surprise expert witness created a prejudice that could not be overcome by Johnson.

*Id.* at 36, 384 N.E.2d at 1040. We further noted that "it is incongruous to allow the State to inject surprise expert testimony at trial without allowing the defendant an opportunity to investigate and prepare for technical evidence which concerns his defense." *Id.* at 36–37, 384 N.E.2d at 1040.

Although the circumstances addressed in *Johnson* square in many ways with the situation before us, we believe that the allegations and showings of prejudice which necessitated a continuance and compelled reversal in *Johnson* are absent in this case. Here the trial court postponed Parrish's appearance by a day, allowing the defense to speak with Parrish only the evening before he testified. Unlike in *Johnson*, however, defense counsel never asserted that the period ultimately allotted by the trial court was insufficient to depose Parrish, prepare for his in-court appearance, or procure any particular rebut-

tal evidence. Counsel voiced no concerns to the trial court as Parrish took the stand. Moreover, on appeal Liddell identifies no specific, responsive measures that he was unable to complete and that he would have pursued if allowed a more substantial continuance. Liddell claims in general that he would have prepared more for Parrish's cross-examination, but he cites no deficiencies in the cross-examination performed, and he advances no alternative strategy or additional subjects that he would have explored if afforded more time to prepare. For these reasons we find *Johnson* distinguishable and remain unpersuaded that Liddell was prejudiced by the denial of a continuance.

Nor can we say that a continuance was necessary merely because Parrish's testimony undercut the defense's mistaken-identity theory and provoked counsel to change tactics in closing argument. We understand that this placed defense counsel in an untenable situation, having to alter his course midtrial and present inconsistent theories in opening and closing statements, thereby compromising his credibility with the jury. But we first note that Parrish was not an unimpeachable witness, and the defense was able to challenge his credibility in several respects—counsel did not have to accept Parrish's allegations as conclusive proof that Liddell was with the victims that evening. Furthermore, the State brought Parrish's identity to the defense's attention before opening statement, so the defense was on notice that its mistaken-identity theory could be fallible and that a new strategy might be warranted from the outset. Finally, a continuance would have forestalled the inevitable; that is, counsel would still be presenting inconsistent theories, although at a later time.

We conclude pursuant to *Lay, supra,* that the deposition opportunity furnished by the trial court was a sufficient remedy for Parrish's late introduction, and the trial court therefore did not abuse its discretion in refusing a lengthier continuance before Parrish testified. *See also Taylor,* 676 N.E.2d at 1046 ("[T]he trial court was well within its discretion in ruling that Taylor was entitled to no more than a continuance. The trial court effectively gave Taylor that relief by allowing him to interview and cross-examine the witness.").

We affirm the trial court's judgment of conviction.

Affirmed.

BARNES, J., and CRONE, J., concur.